F I L E D
United States Court of Appeals
Tenth Circuit

MAR 2 1998

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

DALE F. SVACINA,

      Defendant - Appellant.

No. 96-3317

Appeal from the United States District Court
for the District of Kansas
(D.C. No. 96-CR-10009)

David V. Ayres (Thomas M. Dawson with him on the briefs) of Leavenworth, Kansas, for Defendant-Appellant.

Steven K. Lester (Jackie N. Williams, United States Attorney, and David M. Lind, Assistant United States Attorney, on the brief), Assistant United States Attorney, District of Kansas, Wichita, Kansas, for Plaintiff-Appellee.

Before TACHA, McKAY, and BRISCOE Circuit Judges.

McKAY, Circuit Judge.

On January 18, 1996, Defendant, Mr. Dale F. Svacina, was indicted on two counts: (I) possession with the intent to distribute more than 100 grams of a substance containing methamphetamine, relating to a transaction on August 22, 1995; and (II) attempt to possess with the intent to distribute more than 100 grams of a substance containing methamphetamine, relating to a transaction on November 3, 1995. Pursuant to a written plea agreement, Count I was dismissed and Defendant pled guilty to Count II. Defendant was sentenced on September 16, 1996, to a term of 163 months incarceration and four years supervised release. Defendant challenges only his sentence on appeal.

## I.

Defendant admits that in late August 1995 he transported[1] from California to Kansas packages containing "'contraband'" for which he was to "be paid '$3,000.'" Appellant's App. at 26. During his return trip to Kansas by train, Defendant was questioned by Drug Enforcement Administration (DEA) agents in Albuquerque, New Mexico. Although the officers discontinued their interview when Defendant refused to allow them to examine his carry-on luggage or to use a narcotics detection dog to sniff his luggage, they notified Kansas DEA officers about his destination. Appellant's Opening

---

[1] Although Defendant attempts to distinguish "transporting" and "possessing" drugs, the transportation of drugs necessarily implies their possession. The verb "transport" is defined as carrying or moving something or someone from one location to another. See Webster's Third New International Dictionary 2430 (1986).

Br. at 6. DEA agents confronted Defendant when he departed from the train in Kansas. After a narcotics dog sniffed Defendant's luggage, officers searched the luggage and found 138.8 grams of actual methamphetamine. Id. at 7, 19. This conduct formed the basis for Count I of the indictment against Defendant. Defendant then was arrested in early November 1995 for attempting to purchase 80.64 grams of actual methamphetamine from undercover agents of the Kansas Bureau of Investigation. He pled guilty to this conduct represented by Count II.

Defendant objects to the district court's inclusion of 138.8 grams of methamphetamine from the August 22, 1995 transaction as relevant conduct for purposes of calculating his base offense level under the United States Sentencing Guidelines. To determine the appropriate base offense level under the guidelines, "quantities and types of drugs not specified in the count of conviction are to be included . . . if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." United States Sentencing Guidelines Manual § 1B1.3(a)(2), commentary, backg'd ¶ 3. The court determined that Defendant's possession of methamphetamine in the August transaction was "part of the same course of conduct or common scheme or plan" as Defendant's attempt to purchase, and thereby possess, methamphetamine in the transaction on November 3, 1995.[2] Appellant's App. at 20. We review for clear error

---

[2] The court aggregated 138.8 grams of methamphetamine from Count I with 80.64 grams of methamphetamine from the count of conviction. Under this calculation, Defendant was responsible for 219.44 grams, resulting in a base offense level of 32. See

3

factual findings supporting a district court's base offense level calculations under U.S.S.G. § 1B1.3(a)(2). United States v. Roederer, 11 F.3d 973, 977 (10th Cir. 1993). However, the relevance of conduct charged in Count I is a question of law which we review *de novo*. United States v. Hogan, 116 F.3d 442, 443-44 (10th Cir. 1997); United States v. Slater, 971 F.2d 626, 638 (10th Cir. 1992).

This court has agreed with the Second Circuit distinction between the terms "same course of conduct" and "common scheme or plan." See Roederer, 11 F.3d at 979. While a "common scheme or plan" may require some connection between the acts by common participants, purpose, or overall scheme, the analysis of "same course of conduct" focuses on whether there is "a pattern of criminal conduct." See id. (quoting United States v. Perdomo, 927 F.2d 111, 115 (2d Cir. 1991)). Courts examine several factors to determine whether two or more transactions may be considered a part of the same course of conduct. See id.; United States v. Hahn, 960 F.2d 903, 910 (9th Cir. 1992), cert. denied, 510 U.S. 949 (1993); Perdomo, 927 F.2d at 115; United States v. Santiago, 906 F.2d 867, 872 (2d Cir. 1990). These factors may include similarity, regularity, temporal proximity, "'the nature of the defendant's acts, [and] his role.'" Roederer, 11 F.3d at 979 (quoting Santiago, 906 F.2d at 872); see also U.S.S.G. § 1B1.3, commentary, n.9(B).

Our review of the record indicates that the district court relied on several facts to

_____

U.S.S.G. §§ 1B1.3(a)(2) & 2D1.1(c)(4). The court reduced the base offense level to 29 for Defendant's acceptance of responsibility. See U.S.S.G. § 3E1.1.

support its findings and conclusion that the two offenses were part of the same course of conduct. Defendant was charged in Count I with possession with intent to distribute more than 100 grams of a substance containing methamphetamine. He pled guilty to attempting to possess with intent to distribute more than 100 grams of the same or a similar substance in Count II. A comparison of the dismissed Count I with Count II illustrates the similarity of the offenses charged, Defendant's conduct, and the substance involved. See Roederer, 11 F.3d at 980. Another similarity between the two offenses is that Defendant transported methamphetamine in August to the same area in Kansas involved in the November transaction.[3] See United States v. McKneely, 69 F.3d 1067, 1078 (10th Cir. 1995). Additionally, the large quantity of methamphetamine involved in both instances supports a reasonable inference that Defendant intended to distribute the drug to others. A comparison of the dismissed count with the count of conviction also shows that some regularity of conduct exists--the minimum requirement of two instances of conduct. See Roederer, 11 F.3d at 979 (noting that two or more transactions may be considered a part of the same course of conduct). Finally, the record illustrates that the

---

[3] There is some confusion in the record about whether the methamphetamine in Count I was seized in New Mexico or in Kansas. The district court states that "[a]lthough the drug in Count I was seized . . . in New Mexico, the circumstances suggest that the defendant was transporting it to the Wichita[, Kansas] area, which is the same area involved in Count II." Appellant's App. at 20. However, Defendant's recitation of the facts states that his luggage and person were searched and the drugs seized after he exited the train in Kansas. Appellant's Opening Br. at 7, 18-19. Defendant's admission that the drugs in Count I were seized in Kansas further indicates that the same area was involved in both transactions.

two offenses were temporally related because they occurred less than three months apart. See McKneely, 69 F.3d at 1078-79. The court therefore reasonably inferred that "each [offense] was an episode in an ongoing drug distribution business." Appellant's App. at 20; see Roederer, 11 F.3d at 978-79. Defendant's contention that the two instances of conduct are unrelated is not persuasive.

Defendant also argues that the district court erroneously relied on the presentence report to make its findings concerning relevant conduct. Because Appellant failed to provide us with the presentence report as part of the record on appeal, our review of this issue is limited. Fed. R. App. P. 10; 10th Cir. R. 10.3; see O'Dell v. Shalala, 44 F.3d 855, 857 n.2 (10th Cir. 1994) (noting that although record was inadequate, excerpts provided were sufficient for court to examine merits). We have "held that a district court may not satisfy its obligation by simply adopting the presentence report as its finding." United States v. Farnsworth, 92 F.3d 1001, 1011 (10th Cir.), cert. denied, ___U.S.___, 117 S. Ct. 596 (1996). It is not clear from the record that, in this case, the district court simply adopted the presentence report without any further analysis. Although the district court found the presentence report accurate, it only adopted the presentence report as relevant and true after an analysis of the presentence report's findings and Defendant's objections thereto. See Appellant's App. at 19-23. The record reflects that certain facts relied upon by the court in its relevant conduct analysis were substantiated not only by the presentence report but also by Defendant's plea agreement and Defendant's own

statement submitted to the court.  See id. at 9-10, 26.  The court could reasonably interpret Defendant's statement to mean that he voluntarily possessed the drugs at issue and knowingly transported them to his destination in Kansas.  Moreover, while Defendant objects to the methamphetamine purity findings in the presentence report, the record does not indicate that the court relied on the purity of the substances to determine that the two transactions were related conduct.[4]  Defendant also objected to the presentence report alleging that there was no common victim, accomplices, or purpose, and that there was a different modus operandi.  This objection relates to a "common scheme or plan" analysis for relevant conduct.  The court's finding of relevant conduct, however, was predicated solely on a "same course of conduct" analysis;[5] the factual findings demonstrate similarity, regularity, and temporal proximity of the two offenses.  See id. at 19-21.  We are not convinced by Defendant's argument that the court could not rely on the presentence report, and we cannot conclude that the court clearly erred in adopting the presentence report.

_____

[4] Even if the court erroneously accepted the presentence report's purity finding, we conclude the court's base offense level calculation was not clearly erroneous because the base offense level would remain the same if the court had measured the gross weight of the drugs.  See U.S.S.G. § 2D1.1(c)(4).  The record does not reveal any objection by Defendant to the gross weight of the drugs.  See Appellant's App. at 22-23; Appellant's Opening Br. at 8-10.

[5] Although the court states that Defendant's "possession . . . in Count I was a part of the same course of conduct or common scheme or plan as Count II," Appellant's App. at 20, it did not base its conclusion of relevant conduct on a "common scheme or plan" analysis.

7

Defendant also contends the court's finding of relevant conduct is unwarranted because he could have presented defenses to the August transaction pursuant to our decision in United States v. Custodio, 39 F.3d 1121 (10th Cir. 1994). Custodio does not control the disposition of this case. In Custodio, we agreed with the district court's finding that because the government failed to prove by a preponderance of the evidence that the alleged relevant conduct was part of the same course of conduct or the same scheme or plan as the conduct of conviction, it did not constitute relevant conduct for sentencing purposes. Id. at 1126. In this case, however, the district court made a preliminary determination that the evidence supported a finding of "same course of conduct." Additionally, in Custodio, because the alleged relevant conduct was *uncharged*, the court was concerned that some defenses might have been available to the defendant had the conduct been charged. Id. Unlike Custodio, the conduct at issue in this case was the conduct *charged* in Count I of the indictment and dismissed in the plea agreement. See Roederer, 11 F.3d at 980 (stating that drug quantities in dismissed counts may be considered relevant conduct). Defendant had the opportunity to present defenses during his plea negotiations or to pursue defenses in a trial on the merits of Count I.

Briefly turning to the defenses raised by Defendant, we conclude that they have no merit. Defendant contends that he could have successfully litigated an alleged illegal search and seizure. This defense is neither relevant nor properly before this court. That Defendant could have suppressed the allegedly tainted evidence is not a foregone

8

conclusion.  More importantly, Defendant never made a motion to suppress the evidence relating to the August transaction.[6]  Instead, Defendant chose to pursue the option of plea bargaining.  Defendant was free to withdraw from the plea agreement at the change of plea hearing when he became aware that the court had the ultimate authority to determine relevant conduct, despite the language of the plea agreement.  See Appellant's App. at 15-16.  The record indicates that Defendant entered into the plea agreement with full knowledge of the court's authority to make the final determination on relevant conduct: He answered "Yes" to the court's several questions asking whether he understood that the court ultimately would decide the question of relevant conduct.  Id. at 14-16.

Defendant asserts in his Reply Brief that the government breached its plea agreement when it argued that the court properly analyzed the relevant conduct issue. Generally, issues raised for the first time in a reply brief will not be considered.  See Sadeghi v. INS, 40 F.3d 1139, 1143 (10th Cir. 1994).  However, because the government alleges in its brief that it stands by the plea agreement, we will construe Defendant's argument as a response to the government's position and address his contention.  See id. at 1143.  Whether the government's conduct violated the plea agreement is a question of law which we review de novo.  Allen v. Hadden, 57 F.3d 1529, 1534 (10th Cir.), cert. denied, ___U.S.___, 116 S. Ct. 544 (1995).  In considering whether the plea agreement

---

[6] We need not decide whether the drugs in the August transaction were illegally seized in violation of the Fourth Amendment or whether the exclusionary rule applies to sentencing because Defendant made no motion to suppress the evidence seized.

was violated, we construe the terms of the plea agreement "according to what [Defendant] reasonably understood when he entered his plea." United States v. Jimenez, 928 F.2d 356, 363 (10th Cir.), cert. denied, 502 U.S. 854 (1991).

Based on the limited facts in the record, we conclude the government did not unilaterally breach the plea agreement or act with impunity. The government did not make any attempt to persuade the court that the August 22, 1995 transaction was relevant conduct. Rather, the government briefly answered the court's questions concerning who makes the ultimate determination on relevant conduct. See id. at 363-64 (informing court of pertinent information cannot be considered a breach of plea agreement); see also United States v. Stemm, 847 F.2d 636, 639 (10th Cir. 1988) ("Disclosure of information as to the nature of the offense and each defendant's role is proper and within the Government's duty to provide, despite a promise that the Government would make no recommendation as to sentence."). The government actually stated in its brief that the conduct at issue was *not* relevant conduct. The government, however, properly characterized the issue on appeal to be whether the district court clearly erred in finding Count I part of the same course of conduct as Count II for sentencing purposes. The government cannot be penalized for correctly stating the legal issue to be addressed by this court. Moreover, as noted above, Defendant did not object during his change of plea hearing when the court questioned him about the relevant conduct issue. The record indicates Defendant agreed that it is the court who makes the ultimate determination on

relevant conduct, and admitted that he understood the implications of the court's sentencing authority. See Appellant's App. at 14-15; United States v. Johnson, 973 F.2d 857, 860 (10th Cir. 1992). Defendant was sufficiently advised of the consequences of his plea. We conclude that Defendant's breach of plea agreement argument is baseless.

We hold that the court's factual finding that Defendant's possession of methamphetamine in August 1995 was part of the same course of conduct as the offense of conviction is not clearly erroneous. See McKneely, 69 F.3d at 1078-79; Roederer, 11 F.3d at 978-79. The court did not err by determining that the August methamphetamine transaction was therefore relevant conduct under the sentencing guidelines. It properly aggregated the drug quantity from Count I with the drug quantity in Count II to determine Defendant's base offense level.

**II.**

Defendant argues for the first time on appeal that the district court made an ex post facto application of the sentencing guidelines. The district court applied the amended November 1995 guidelines that were in effect on the date of sentencing, September 16, 1996, and on the date of the count of conviction, November 3, 1995.[7] Defendant contends the court should have applied the guidelines in effect on August 22, 1995, the

---

[7] The effective date of the amended guidelines was November 1, 1995. See U.S.S.G. App. C at 344 (Amend. 518).

11

date of the relevant conduct offense. However, Defendant did not raise this objection to the presentence report prior to or at his sentencing hearing. Failure to object generally precludes review by this court. United States v. Saucedo, 950 F.2d 1508, 1511 (10th Cir. 1991), overruled on other grounds by Stinson v. United States, 508 U.S. 36 (1993). Because Defendant now alleges a constitutional error, we will review for plain error. See id. at 1516-17 (holding ex post facto application of the sentencing guidelines amounted to plain error). Plain error exists when a clear or plain error affecting substantial rights has "seriously affect[ed] the fairness, integrity, or public reputation of the judicial proceeding." Johnson v. United States, ___U.S.___, ___, 117 S. Ct. 1544, 1549 (1997) (internal quotation marks and citations omitted); See Fed. R. Crim. P. 52(b).

Generally, a sentencing court must apply the sentencing guidelines in effect on the date of sentencing unless such application would violate the Ex Post Facto Clause of the United States Constitution. See U.S. Const. art I, § 9, cl. 3; U.S.S.G. § 1B1.11; United States v. Gerber, 24 F.3d 93, 95-96 (10th Cir. 1994); Saucedo, 950 F.2d at 1513. The Ex Post Facto Clause is violated if the court applies a guideline to an event occurring before its enactment, and the application of that guideline disadvantages the defendant "by altering the definition of criminal conduct or increasing the punishment for the crime." Lynce v. Mathis, ___ U.S.___, ___, 117 S. Ct. 891, 896 (1997); see Miller v. Florida, 482 U.S. 423, 430 (1987); Gerber, 24 F.3d at 96.

In this case, the application of the amended guidelines to the prior relevant conduct

was retrospective. Prior to November 1, 1995, the Drug Equivalency Tables in the commentary to U.S.S.G. § 2D1.1 distinguished between D- and L-methamphetamine. See U.S.S.G. App. C at 343-44. Under the old guidelines, a sentence for L-methamphetamine was significantly less than one for D-methamphetamine. If the old guidelines had been applied to the relevant conduct occurring on August 22, 1995, the government would have been required to prove by a preponderance of the evidence the specific type of methamphetamine at sentencing. See Fed. R. Crim. P. 32(c)(1); United States v. Lande, 40 F.3d 329, 330-31 (10th Cir. 1994) (holding that the government established by a preponderance that drug was D-methamphetamine), cert. denied, 514 U.S. 1122 (1995); United States v. Deninno, 29 F.3d 572, 580 (10th Cir. 1994) (stating that the government has burden of proving type of controlled substance at sentencing), cert. denied, 513 U.S. 1158 (1995). The amended guidelines, Amendment 518, effectively reduced the government's burden at sentencing by deleting the distinction between D- and L-methamphetamine so that "all forms of methamphetamine [would] be treated" like D-methamphetamine. U.S.S.G. App. C at 344. Further, the change in the guidelines increased the "quantum of punishment attached to the [offense]," Miller, 482 U.S. at 433 (quoting Dobbert v. Florida, 432 U.S. 282, 294 (1977)), by sentencing all forms of methamphetamine as type D. See U.S.S.G. App. C at 343-44. Despite the "simplifying guideline application" language explaining the amendment, id. at 344, this type of change is not a mere procedural clarification. See Miller, 482 U.S. at 430, 433.

13

We conclude that the change at issue is substantive and therefore implicates the Ex Post Facto Clause.  See Gerber, 24 F.3d at 97.  However, the court's retroactive application of the November 1995 amended guidelines violates the Ex Post Facto Clause only if it disadvantaged Defendant.  See id. at 96 (citing Miller, 482 U.S. at 430).

Defendant argues he was disadvantaged because the government was not required to prove at sentencing the type of methamphetamine involved in the relevant conduct.[8] The question of disadvantage in this case rests entirely on a factual determination of the type of methamphetamine.  We generally review factual issues to be determined by the sentencing court for clear error.  Saucedo, 950 F.2d at 1518.  Had Defendant objected to the type of methamphetamine, the government would have been required to prove the distinction between D- and L-methamphetamine as required by the old guidelines.  Thus Defendant would be disadvantaged if the government, upon notice of its burden, either could not prove the methamphetamine was type D, or proved it to be type L.  However, the record indicates that Defendant did not object and thereby give notice of this issue to the court or to the government.[9]  As discussed above, failure to object generally precludes

---

[8] Because Defendant claims only that the government should have proved the type of methamphetamine for the 138.8 grams involved in the August 1995 transaction, see Appellant's Opening Br. at 25, we do not address the methamphetamine involved in the count of conviction.

[9] Defendant argues that his objection to the presentence report's purity finding preserves the D- versus L-methamphetamine issue for review.  See Appellant's Opening Br. at 10, 25-27.  We decline to consider Defendant's claim because he did not include the presentence report as part of the record on appeal.  See 10th Cir. R. 10.3; United States v. Janus Indus., 48 F.3d 1548, 1559 (10th Cir.), cert. denied, ___ U.S.___, 116 S.

14

review except for plain error.  This court has held repeatedly that factual disputes not brought to the attention of the court do not rise to the level of plain error.  See United States v. Yarnell, 129 F.3d 1127, 1137-38 (10th Cir. 1997) (citing Saucedo, 950 F.2d at 1518); Deninno 29 F.3d at 580; see also United States v. Scrivner, 114 F.3d 964, 968-69 (9th Cir. 1997) (agreeing with Tenth Circuit's holding in Deninno).  This is precisely the kind of issue that should be raised at sentencing, if not before, so that "a record sufficient to permit adequate review is thereby developed."  Saucedo, 950 F.2d at 1518.  As a factual issue, an objection is the only means by which a party can give notice that an evidentiary hearing is required or that the government has a burden it has not met.  Because Defendant failed to properly raise the D- versus L-methamphetamine issue in the district court, we have no factual record by which to conduct any review.  See id.  We conclude that Defendant waived the D- versus L-methamphetamine issue on appeal.  Therefore, although the court's retrospective application of the amended 1995 guidelines implicated the Ex Post Facto Clause, that application did not amount to plain error.

To the extent Defendant argues that his trial counsel failed to properly preserve the

---

Ct. 87 (1995); United States v. Vasquez, 985 F.2d 491, 494-95 (10th Cir. 1993).  The limited record provided contradicts Defendant's argument that the purity objection goes to the "type" of methamphetamine.  From our review of the record, it seems that Defendant's purity objection was treated by the court as an objection to the amount or net weight of the methamphetamine, not its "type" or structural formula.  See U.S.S.G. § 2D1.1(c), notes (A) & (B); Appellant's App. at 21-22.  Because the record is insufficient to permit a proper assessment of the issue, we will not review Defendant's contention.  See Deines v. Vermeer Mfg. Co., 969 F.2d 977, 979-80 (10th Cir. 1992).

15

issue of D- versus L-methamphetamine, and therefore raises an ineffective assistance of counsel claim, we dismiss that claim without prejudice. Generally, claims of ineffective assistance of counsel should be brought in a collateral proceeding pursuant to 28 U.S.C. § 2255. See United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc); see also United States v. Glover, 97 F.3d 1345, 1350-51 (10th Cir. 1996) (remanding section 2255 proceeding to determine type of methamphetamine with instruction that if government cannot establish substance was D-methamphetamine as required by old guidelines, defense counsel's failure to challenge defendant's sentence in this regard would constitute ineffective assistance of counsel).

Defendant's sentence is AFFIRMED.

No. 96-3317, United States v. Svacina

BRISCOE, Circuit Judge, concurring:

The majority correctly concludes Svacina's unconvicted crime was relevant conduct to the crime of conviction. Although the majority also reaches the correct result in concluding Svacina is not entitled to resentencing based on his ex post facto argument, I would reach the result by a much different route.

Svacina was charged with two crimes: possession of methamphetamine in August 1995, and possession of methamphetamine on November 3, 1995. He pleaded guilty to the later offense and the earlier offense was dismissed. However, in determining the drug quantity attributable to Svacina, the court included the drug quantity involved in the earlier crime because the earlier crime was relevant conduct under the guidelines.

When Svacina committed the first crime, the guidelines provided a lighter sentence for possession of L-methamphetamine than for possession of an equal quantity of D-methamphetamine, and the government had the burden at sentencing of proving the type of methamphetamine possessed. United States v. Lande, 40 F.3d 329, 330-31 (10th Cir. 1994); United States v. Dennino, 29 F.3d 572, 580 (10th Cir. 1994). However, when Svacina committed the second crime, the guidelines provided the same sentence for possession of L-methamphetamine as for D-methamphetamine. In sentencing him for the later offense, the district

court treated the methamphetamine involved in both offenses as D-methamphetamine.

Had Svacina been convicted of the earlier crime and not the later crime, application of the amended guidelines to determine the drug quantity would violate the ex post facto clause. The ex post facto clause is violated when application of an amended sentencing guideline to an event occurring before its enactment disadvantages the defendant by increasing punishment for the crime for which the defendant is sentenced. See Lynce v. Mathis, 117 S. Ct. 891, 892 (1997); Miller v. Florida, 482 U.S. 423, 430 (1987). Thus, when the sentence for the crime of conviction is increased by an amendment enacted after the crime was committed, the ex post facto clause is violated. See United States v. McMullen, 86 F.3d 135, 138 (8th Cir. 1996); United States v. Gerber, 24 F.3d 93, 96 (10th Cir. 1994).

That is not what occurred here. Svacina was not sentenced for the pre-amendment offense. His sentence for the post-amendment crime of conviction was not retroactively increased by the amendment. The guidelines commentary, as well as binding precedent, compels the conclusion that application of the amended guidelines to pre-amendment relevant conduct does not violate the ex post facto clause.

Generally, the guidelines manual in effect on the date of sentencing applies, unless it would violate the ex post facto clause. U.S.S.G. § 1B1.11(a), (b).

However, under the "one book" rule, "[i]f the defendant is convicted of two offenses, the first committed before, and the second after, a revised edition of the Guidelines Manual became effective, the revised edition of the Guidelines Manual is to be applied to both offenses." U.S.S.G. § 1B1.11(b)(3). Application Note 2 explains:

> Subsection (b)(3) provides that where the defendant is convicted of two offenses, the first committed before, and the second after, a revised edition of the Guidelines Manual became effective, the revised edition of the Guidelines Manual is to be applied to both offenses, even if the revised edition results in an increased penalty for the first offense. Because the defendant completed the second offense after the amendment to the guidelines took effect, the ex post facto clause does not prevent determining the sentence for that count based on the amended guidelines. For example, if a defendant pleads guilty to a single count of embezzlement that occurred after the most recent edition of the Guidelines Manual became effective, the guideline range applicable in sentencing will encompass any relevant conduct (e.g., related embezzlement offenses that may have occurred prior to the effective date of the guideline amendments) for the offense of conviction. The same would be true for a defendant convicted of two counts of embezzlement, one committed before the amendments were enacted, and the second after. In this example, the ex post facto clause would not bar application of the amended guideline to the first conviction; a contrary conclusion would mean that such defendant was subject to a lower guideline range than if convicted only of the second offense.

Guidelines commentary that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is a plainly erroneous interpretation of the guideline. Stinson v. United States, 508 U.S. 36 (1993); United States v. McCloud, 127 F.3d 1284 (10th Cir. 1997). The

commentary is not clearly wrong about application of an amended guideline to unconvicted pre-amendment relevant conduct of a post-amendment crime of conviction, it is not inconsistent with the guideline it explains, and it is not contrary to federal law.

The ex post facto clause has two purposes--to restrain legislatures from arbitrary action and to assure legislative acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed. Miller, 482 U.S. at 429-30; Weaver v. Graham, 450 U.S. 24, 28-30 (1981); Gerber, 24 F.3d at 96. "Critical to relief under the Ex Post Facto Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." Weaver, 450 U.S. at 30.

Here, when Svacina committed his post-amendment crime of conviction, he had fair warning his pre-amendment conduct could be used in determining his sentence for the post-amendment crime and that possession of L-methamphetamine was now regarded as just as serious as possession of D-methamphetamine. It was not the amendment to the guidelines that disadvantaged him, but his election to continue his criminal activity after the amendment became effective. He could easily have avoided coming under the amendment by not continuing to possess methamphetamine. See United States v. Cooper, 35 F.3d

-4-

1248, 1250 (8th Cir. 1994), vacated and remanded, 514 U.S. 499 (1995), opinion reinstated, 63 F.3d 761 (8th Cir. 1995); see also, United States v. Cabrera-Sosa, l81 F.3d 998, 1001 (10th Cir.), cert. denied, 117 S. Ct. 218 (1996); United States v. Bailey, 123 F.3d 1381 1406 (11th Cir. 1997).

Moreover, in Witte v. United States, 515 U.S. 389 (1995), the Court held use of uncharged misconduct to enhance the sentence for a post-guidelines crime of conviction does not violate the ex post facto clause. This circuit has also used the same analysis in rejecting ex post facto claims based on amendments to sentencing laws. In United States v. Haddock, 956 F.2d 1534, 1553-54 (10th Cir. 1992), overruled on other grounds, 117 S. Ct. 921 (1997), the court held consideration of losses from pre-guidelines fraud in determining the offense level for post-guidelines fraud did not violate the ex post facto clause. Although grouping the losses "arguably [made] more burdensome Haddock's punishment for his post-guidelines crimes," the punishment for post-guidelines crimes was not imposed retroactively. The court concluded "enhancement of a sentence for a later offense based on losses associated with crimes that were committed prior to the effective date of the Guidelines does not violate the Ex Post Facto Clause." Id. at 1554; see also, United States v. Roederer, 11 F.3d 973, 975 (10th Cir. 1993).

Similarly, in Cabrera-Sosa, the defendant raised an ex post facto challenge to an aggravated felony enhancement to his sentence for illegal reentry after deportation for a felony. He committed the underlying felony, possession of cocaine, in 1986 but the aggravated felony provision was not enacted until 1988. He reentered the United States in 1992. The court held the ex post facto clause was not violated by applying the 1988 aggravated felony provision to a crime committed in 1986 and enhancing his sentence for the 1992 crime of conviction. The court explained that although defendant was clearly disadvantaged by the aggravated felony enhancement, he was not sentenced for the drug offense but for illegal entry, and the penalties were unambiguous when he reentered the country after 1988.

Here, application of the amended guideline to pre-amendment relevant conduct used to enhance the sentence for the post-amendment crime of conviction did not retroactively increase the penalty for the earlier crime. Instead, it provided a stiffer penalty for the crime of conviction. Although application of the amended guideline may have disadvantaged Svacina, it did not violate the ex post facto clause because he was not sentenced for the pre-amendment relevant conduct.

Because application of the amended guideline does not violate the ex post facto clause, we need not address whether Svacina waived objections to the

-6-

government's failure to prove the type of methamphetamine at sentencing or whether he might have an ineffective assistance of counsel claim.