**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 23 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

MARK HOLBROOK,

    Defendant-Appellant.

No. 99-6268

(D.C. No. 98-CR-239-C)
(W.D.Okl.)

**ORDER AND JUDGMENT** *

Before **SEYMOUR** , Chief Judge, **EBEL** and **BRISCOE,** Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument

Defendant Mark Holbrook, who pleaded guilty to manufacturing

methamphetamine in violation of 21 U.S.C. § 841(a)(1), appeals the sentence

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

imposed by the district court. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I

The Presentence Investigation Report ("PSIR") filed in this case sets forth the following facts. Responding to "reports of a man with a gun," Oklahoma City police officers followed and detained Holbrook in March 1998. PSIR at 7 (¶ 15). While searching Holbrook's vehicle, officers discovered a loaded revolver, drug paraphernalia, and 810 grams of ephedrine/pseudoephedrine. [1] In September 1998, the Federal Bureau of Investigation ("FBI") learned from confidential sources that Holbrook sold a man named Brian Stone 1.5 grams of methamphetamine; Stone also reported that he had seen an ounce of methamphetamine in Holbrook's kitchen. Based on this and other confidential information, the FBI "established surveillance" at Holbrook's Oklahoma City residence. PSIR at 3 (¶ 5). Shortly thereafter, FBI agents observed a man named Russell Trail leaving Holbrook's home. The agents stopped Trail and found in Trail's possession 6.9 grams of methamphetamine "of 50 percent purity." Id. at 4 (¶ 6). Trail informed the agents that the drugs "had come from the methamphetamine laboratory" located in Holbrook's garage. Id. The agents then arrested Holbrook and searched his

---

[1] In addition, while frisking Holbrook officers discovered a hypodermic syringe, 33.4 grams of marijuana, and 11 tablets of Valium.

vehicle. That search led to the discovery of a ziplock bag containing 13.7 grams of 54.1 percent pure methamphetamine and 60 tablets of "60 mg. pseudoephedrine." Id. (¶ 8). After obtaining a warrant, the agents searched Holbrook's residence and found a methamphetamine laboratory, a baggie containing 560 grams of ephedrine, and 17.67 grams of 80 percent pure methamphetamine (also known as "actual" methamphetamine).

FBI agents obtained additional information in mid-September 1998. At that time the agents learned that Holbrook had been using Trail's residence to manufacture drugs. The agents discovered that between mid-October and early November 1998, Holbrook and Trail conducted "three and one-half cooks" at Trail's house. Id. at 8 (¶ 18). Holbrook told Trail that he (Holbrook) intended to sell three ounces of this methamphetamine for $3,000. The agents also received information that Holbrook previously purchased at least one ounce of methamphetamine from Trail.

Holbrook then proceeded to make two methamphetamine sales to undercover officers. Both of these sales occurred in early November 1998. The first sale involved 12.9 grams of methamphetamine. During the course of the sale, Holbrook stated that the methamphetamine had been "cooked with ephedrine" because that was the best way to ensure "a quality product with a good yield." Id. at 5 (¶ 10.b). The second sale involved 83.4 grams of

methamphetamine.  After arresting Holbrook in connection with this sale, officers

discovered an additional two grams of actual methamphetamine.

One month later, in December 1998, FBI agents paid a visit to Trail at his

residence.  Trail admitted that he was friends with Holbrook and that the two men

cooked methamphetamine together at Trail's house.  Trail also stated that

Holbrook provided the "necessary chemicals" for Trail to manufacture the drugs.

Id. at 5-6 (¶ 11).  Agents searched Trail's residence and found glassware, a "two-

layer liquid" suspected to be methamphetamine oil, "white powdery substances,"

and a potpourri of chemicals (including iodine, lye, red phosphorous, and

ephedrine).  Id. at 6 (¶ 12).  Subsequent laboratory reports confirmed that these

materials contained 8.47 grams of actual methamphetamine and 33.9 grams of a

methamphetamine "mixture."  Id. (¶ 13).  Trail later informed the agents that

Holbrook conducted at least one methamphetamine "cook" per week in February

and March of 1998.  Id. (¶ 14).  These "cooks" produced a total of at least four

pounds of methamphetamine.  Id.[2]

A grand jury returned an eight-count indictment against Holbrook.  In

exchange for the government's promise not to pursue the remaining charges,

Holbrook agreed to plead guilty to Count 3 of the indictment.  Count 3 charged

---

[2] "[T]o avoid double-counting with later amounts," the government ultimately attributed three (rather than four) pounds of this methamphetamine to Holbrook.  PSIR at 6-7 (¶ 14).

Holbrook with manufacturing methamphetamine in violation of 21 U.S.C. § 841(a)(1). Holbrook's plea agreement specified that the maximum term Holbrook could receive for this offense was "life imprisonment." Appellant's Appendix at 1. Holbrook expressly acknowledged in the plea that "[n]o agreement exists concerning a sentencing departure under the Sentencing Guidelines or concerning a reduction of sentence" under Federal Rule of Criminal Procedure 35(b). Id. at 5.

Prior to sentencing, Holbrook's counsel filed objections to the PSIR. Holbrook objected to (1) the government's calculation of drug quantities, which attributed to Holbrook 17,217.56 kilograms of marijuana equivalent; (2) an enhancement for the "emission of a hazardous substance;" and (3) an enhancement for "recruiting another defendant to the offense." Motion to Withdraw as Attorney and Anders Brief ("Anders Brief") at 2-3; Brief of Plaintiff-Appellee at 5. After the district court was assured at the sentencing hearing that Holbrook had received a copy of the PSIR and had discussed it with counsel, Holbrook's attorney withdrew the objection to the government's calculation of drug quantities. Holbrook stated on the record that this was consistent with his wishes. Holbrook's attorney apparently withdrew the objection based on an "informal discussion" that occurred before the parties entered the courtroom "that the amounts of drugs were so high and the amount

5

required before the offense level would drop, even if [Holbrook] were successful on the objectio[n]," would not change the sentencing range.     Anders Brief at 3. [3]

---

[3] The following colloquy occurred at the sentencing hearing:

> THE COURT: This case has been set for sentencing having been a week or so ago. I have forgotten the exact date we were here so that the probation officer could consider the objections which had been misdirected and hadn't been included in the pre-sentence report before last week. That has now taken place. . . . The pre-sentence investigation report has been amended to reflect those remaining objections, and let me ask you, Mr. Holbrook, have you received a copy of the amended report and had sufficient time to discuss it with [your counsel] Mr. Wallace for purposes of today's proceedings?
> DEFENDANT HOLBROOK: Yes, Your Honor.
> THE COURT: Mr. Wallace do you confirm that?
> MR. WALLACE: Yes, ma'am.
> ***
> THE COURT: According to the findings and recommendations of the probation offices, the total offense level in this case is 39. The criminal history category is 1 and the resulting guideline imprisonment range is 262 to 327 months. To these conclusions, the Defendant has lodged a number of objections relating primarily to drug amounts contained in various paragraphs of the pre-sentence report. Mr. Wallace, according to our conversation immediately before this hearing, your client may wish to withdraw those objections or not.
> MR. WALLACE: Your Honor, if the Court please, the objections concerning the amounts we are prepared to withdraw. We would like to proceed with our objections to the special offense characteristic in paragraph 28 concerning emission of a hazardous substance and paragraph 30 adjustment for role in the offense alleging that he recruited and supervised the activities of Russell Trail.
> THE COURT: Mr. Holbrook, is this consistent with your wishes, what Mr. Wallace has stated?
> DEFENDANT HOLBROOK: Yes, ma'am.

(continued...)

6

The district court granted Holbrook's remaining objections, assigned Holbrook "a criminal history category of 1 and a total offense level of 35," and determined that the "imprisonment range" under the Guidelines was between 168 and 200 months. Aple. Supp. App. at 50. The court sentenced Holbrook to 168 months in prison, followed by five years of supervised release.

## II

Holbrook's argument on appeal is threefold. Holbrook contends that (1) the quantity of drugs attributed to him in the PSIR was unsupported by the record; (2) he did not use a weapon to commit the underlying offense and thus should not have been subject to a two-level enhancement under United States Sentencing Guidelines ("U.S.S.G.") § 2D1.1(b)(1); and (3) he met all of the requirements set forth in U.S.S.G. § 5C1.2, and therefore should have received a two-level reduction under U.S.S.G. § 2D1.1(b)(6). Holbrook's first argument is similar (but

---

[3](...continued)
THE COURT: This was as noted in our informal discussion before coming in the courtroom, the amounts of drugs are so high and the amount required before it would drop, the offense level is so great that even – I believe in Mr. Wallace's judgment, you will correct me if I am stating this wrong, even if the Defendant were successful on the objections on which he might be successful, it wouldn't change the guideline range at all; is that correct?
MR. WALLACE: That's correct, Your Honor.
THE COURT: I will proceed, then[,] to the two objections that you mentioned. . . .

Aple. Supp. App. at 47-49.

7

not identical) to the objection he voluntarily withdrew at the sentencing hearing. Holbrook's second and third arguments were never presented to the district court in any form.

Holbrook's failure to bring these issues to the district court's attention forecloses his appeal. Because Holbrook declined to argue these points to the district court, "the only appropriate standard of review is plain error." United States v. Deninno, 29 F.3d 572, 580 (10th Cir. 1994); see also United States v. Svacina, 137 F.3d 1179, 1187 (10th Cir. 1998) (affirming that "failure to object generally precludes review except for plain error"). However, "[t]his court has held repeatedly that factual disputes not brought to the attention of the court do not rise to the level of plain error." Svacina, 137 F.3d at 1187 (citing, among other cases, United States v. Yarnell, 129 F.3d 1127, 1137-38 (10th Cir. 1997)); see also United States v. Green, 175 F.3d 822, 837 (10th Cir.) ("A defendant [must] raise alleged factual inaccuracies in a presentence report before the district court in order to preserve the issue on appeal.") (brackets in original, citation omitted), cert. denied, 120 S. Ct. 132 (1999). Holbrook's objection to the amount of drugs attributed to him in the PSIR is indisputably factual. In support of this argument Holbrook repeatedly decries the lack of "reliable evidence" linking him to the methamphetamine seized by law enforcement officials. See, e.g., Appellant's Supplemental Brief on Appeal at 3, 7, 9. Holbrook's second and

8

third objections also involve contested facts. For example, a factual premise underlying both arguments is that "there were no weapons discovered" during the commission of the charged offense. Id. at 11, 12.

Holbrook cannot salvage his direct appeal by claiming ineffective assistance of counsel. Citing Strickland v. Washington, 466 U.S. 668 (1984), Holbrook argues that his trial lawyer breached a duty by failing to make the objections now asserted and by providing faulty legal advice. As we explained in United States v. Wiseman, 172 F.3d 1196 (10th Cir.), cert. denied, 120 S. Ct. 211 (1999),

> [i]neffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal. United States v. Galloway, 56 F.3d 1239 (10th Cir. 1995). Among the reasons for our holding in Galloway, we noted that by postponing consideration of ineffective assistance claims to collateral review, "at the very least counsel accused of deficient performance can explain their reasoning and actions, and the district court can render its opinion on the merits of the claim." We also noted the importance of having the district court, with its familiarity with counsel's performance, consider ineffective assistance claims in the first instance.

Id. at 1207 (pinpoint citations omitted); accord United States v. Gell-Iren, 146 F.3d 827, 831-32 (10th Cir. 1998). Because this is not one of those "rare circumstances" in which the record pertaining to an ineffective assistance claim "has been adequately developed by the district court prior to appeal," see United States v. Carter, 130 F.3d 1432, 1442 (10th Cir. 1997), we dismiss Holbrook's allegations against his trial attorney without prejudice.

9

## III

The sentence imposed by the district court is AFFIRMED. After he filed his initial brief, Holbrook filed pro se a "Motion to Supplement the Proceedings." Because it appears to present additional objections to the PSIR that were not raised in district court, that motion is DENIED. The motion of Holbrook's counsel to withdraw as Holbrook's counsel is GRANTED.

Entered for the Court

Mary Beck Briscoe
Circuit Judge