**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 15 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

LLOYD LARSON,

    Defendant - Appellant.

No. 02-2240
(D. New Mexico)
(D.C. No. CR-02-208-LH)

**ORDER AND JUDGMENT**[*]

Before **LUCERO**, **O'BRIEN**, and **TYMKOVICH**, Circuit Judges.

Following his indictment for killing two elderly couples in a drunk-driving accident, Lloyd Larson pleaded guilty to four counts of second-degree murder. At sentencing, the district court increased Larson's offense level by two, based on U.S.S.G. §§ 5K2.14 (concerning endangerment to public health and safety) and 5K2.5 (concerning property damage). On appeal, Larson argues that (1) the district court misapplied the Sentencing Guidelines, (2) the district court afforded inadequate notice of its intent to depart upward, and (3) the government violated

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

the plea agreement. Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we conclude that the district court did not provide Larson adequate notice of its intent to depart, and, accordingly, vacate and remand for resentencing.

## I.

Lloyd Larson, while intoxicated, drove the truck of his employer, the Bureau of Indian Affairs ("BIA") the wrong way on Interstate 40. When Larson nearly struck the car of a New Mexico State police officer patrolling Interstate 40, the officer began pursuing Larson, using his lights and siren to get Larson's attention and warn oncoming traffic, while driving in the median to avoid a collision. In the next two minutes and ten seconds, Larson passed at least thirty-seven on-coming vehicles. Some of those vehicles had to take evasive action to avoid a collision. Larson's drunken cruise came to an end when he struck a Cadillac with two elderly couples inside, head-on, going between sixty and seventy miles per hour, killing all four occupants instantly. Two hours later, Larson's blood-alcohol level was .205, nearly two and a half times the legal limit in New Mexico. Larson pleaded guilty to four counts of second-degree murder. As part of the plea agreement, the United States agreed not to file a motion for upward departure and not to oppose a sentence at the lowest end of the applicable Guideline range. The parties stipulated to a base offense level of 33, which was

increased by four under the grouping rules contained in U.S.S.G. §§ 3D1.1 through 3D1.4. The parties also stipulated that Larson would be entitled to a three-level adjustment for acceptance of responsibility, so long as he provided an appropriate statement to the probation office. Accordingly, the presentence report ("PSR") recommended a total offense level of 34, criminal-history category II, yielding a sentencing range of 168 to 210 months. The PSR identified a single ground for possible upward departure, U.S.S.G. § 4A1.3 (concerning criminal history), noting that the criminal-history category may underrepresent the seriousness of Larson's criminal history insofar as Larson had a previous conviction for driving while intoxicated that did not result in any criminal-history points because it occurred in a tribal court.

At approximately 5:00 p.m. on the evening before the 9:30 a.m. sentencing hearing, a probation officer notified the parties that the court was considering an upward departure pursuant to U.S.S.G. §§ 5K2.14 (concerning endangerment to public health and safety) and 5K2.1 (concerning offenses resulting in death). Soon after the hearing began the next morning, defense counsel sought a continuance, arguing that he had not received reasonable notice that the court was contemplating an upward departure on these grounds. Refusing to grant the continuance, the district court informed the parties that it proposed departing under not only § 5K2.14, of which the court had informed the parties the previous

evening, but also § 5K2.5 (concerning property damage), of which the parties had no prior notice. While the court had stated the previous evening that it was also considering a departure under § 5K2.1, the court ultimately decided not to depart on this ground.

In the end, the district court made a two-level upward departure based on U.S.S.G. §§ 5K2.14 and 5K2.5. Larson's resulting offense level was 36, which produces a Guideline range of 210 to 262 months, as opposed to the range of 168 to 210 months under an offense level of 34. The court sentenced Larson to 240 months. This appeal followed.

## II.

Larson contends that his sentence must be vacated because the district court afforded him inadequate notice of its intent to depart upward as required by Federal Rule of Criminal Procedure 32. The adequacy of the court's notice in this context presents a question of law subject to *de novo* review. *United States v. Soto-Ornelas*, 312 F.3d 1167, 1169 (10th Cir. 2002); *United States v. Booth*, 309 F.3d 566, 577 n.9 (9th Cir. 2002).

In *Burns v. United States*, 501 U.S. 129, 138-39 (1991), the Supreme Court interpreted Federal Rule of Criminal Procedure 32 to require that "before a district court can depart upward on a ground not identified as a ground for upward departure either in the presentence report or in a prehearing submission by the

Government," the district court must "give the parties reasonable notice that it is contemplating such a ruling. This notice must specifically identify the ground on which the district court is contemplating an upward departure." The Court explained that "[t]he right to be heard has little reality or worth unless one is informed that a decision is contemplated." *Burns*, 501 U.S. at 136 (quotation omitted).

As noted in the statement of facts, the PSR mentioned only one possible ground for upward departure — underrepresentation of criminal history under U.S.S.G. § 4A1.3. The district court did not rely on this ground. Rather, it notified the parties at 5:00 p.m. the night before the 9:30 a.m. sentencing hearing that it was contemplating a departure under § 5K2.14. The second basis for the district court's upward departure, § 5K2.5, was not brought to the parties' attention until the hearing itself.

In refusing to grant Larson's request for a continuance, the district court noted that although it was familiar with the Supreme Court's jurisprudence in *Burns*, it considered the notice requirement satisfied given its assessment that defense counsel knew "th[e] case as well as anybody in this state," including "the aggravating factors . . . set forth in the guidelines," "what the facts are," and "what the law is." (3 R. at 3). Thus, the district court, and the government on appeal, appear to assume that no notice is required where defense counsel is

familiar with the facts of the case and general departure principles. We cannot agree.

Contrary to the district court's suggestion, the amount of notice required under *Burns* does not vary with the sentencing judge's assessment of a particular lawyer's familiarity with the law on departures from the Guidelines. We further reject the government's argument on appeal that little or no notice is required simply because defense counsel is familiar with the facts underpinning the basis for departure. As the *Burns* Court explained, "[b]ecause the Guidelines place essentially no limit on the number of potential factors that may warrant a departure, no one is in a position to guess when or on what grounds a district court might depart, much less to 'comment' on such a possibility in a coherent way." 501 U.S. at 136–37 (citation omitted). If the district is required to afford only minimal notice, or no notice at all, in circumstances where, as the district court noted, defense counsel "know[s] what the facts are," *Burns'* requirement of "reasonable notice" would be subverted. *See United States v. Hinojosa-Gonzales*, 142 F.3d 1122, 1123 (9th Cir. 1998) (explaining that "[b]oth factual and legal grounds for departure are within Rule 32's reach"); *United States v. Paslay*, 971 F.2d 667, 673 n.11 (11th Cir. 1992) (rejecting argument that mention of facts sufficient to warrant upward departure in a sentencing memorandum satisfies *Burns'* notice requirement). Every competent lawyer should be familiar with the

facts of the case. But the facts are not applied in a legal vacuum. It goes without saying that a lawyer familiar with the facts of the case would need to research the terms of a given departure factor in the Guidelines in order to assure "focused, adversarial development of the factual *and* legal issues relevant to determining the appropriate Guidelines sentence." *Burns*, 501 U.S. at 134 (emphasis added). Without reasonable notice, "a critical sentencing determination will go untested by the adversarial process." *Id.* at 137.

The question, therefore, is not whether the district court was required to afford notice, but whether the notice afforded to the parties was reasonable. While the degree of notice that is required may vary from case to case, and we will not constrain district courts with rigid guidelines, we have little difficulty concluding that neither notice given at 5:00 p.m. the evening before a 9:30 a.m. sentencing hearing nor notice at the commencement of the sentencing hearing itself is reasonable. *See United States v. Leonard*, 37 F.3d 32, 37 (2d Cir. 1994) (holding that one-day notice is not sufficient); *United States v. Jackson*, 32 F.3d 1101, 1107–08 (7th Cir. 1994) (holding that same-day notice is not sufficient). *Cf. United States v. Clements*, 73 F.3d 1330, 1341 (5th Cir. 1996) (holding that six days' notice is sufficient).

Because Larson did not receive the notice to which he was entitled under Rule 32, we reverse the judgment of the district court.

## III.

Larson also contends that the government's written response to his sentencing memorandum and statements made at the sentencing hearing regarding an upward departure violated the terms of the plea agreement. This court reviews *de novo* a claim that the government breached a plea agreement. *United States v. Peterson*, 225 F.3d 1167, 1170 (10th Cir. 2000).

Whether a breach of a plea agreement has occurred depends upon: (1) the nature of the government's promise; and (2) the defendant's reasonable understanding of the promise at the time the guilty plea was entered. *United States v. Rockwell Int'l Corp.*, 124 F.3d 1194, 1199 (10th Cir. 1997), *cert. denied* 523 U.S. 1093 (1998). General principles of contract law apply to define the nature of the government's obligations under a plea agreement. *United States v. Thompson*, 237 F.3d 1258, 1260 (10th Cir. 2001).

The government breaches an agreement not to oppose a motion when it does more than merely state facts or validate facts in the PSR, and "provide[s] a legal 'characterization' of those facts [or] 'argue[s] the effect' of those facts to the sentencing judge." *United States v. Brye*, 146 F.3d 1207, 1211 (10th Cir. 1998) (quoting *United States v. Hawley*, 93 F.3d 682, 693 (10th Cir. 1996)). Once the government has agreed not to oppose a motion, it may not call witnesses, present exhibits, or make any legal arguments in opposition to the defendant's motion.

-8-

*Id.*

However, "a plea agreement requiring the government to 'defer' to the court's determination of an issue does not require the government to stand mute under all circumstances." *Id.* As an officer of the court, the government is entitled "to correct factual and legal inaccuracies for the court," *id.*, and "cannot be penalized for correctly stating the legal issue to be addressed by th[e] court." *United States v. Svacina*, 137 F.3d 1179, 1185 (10th Cir. 1998).

With these principles in mind, we turn to the language of the plea agreement. The agreement provided that the government would not: (1) file a motion for upward departure; or (2) oppose a sentence at the lowest end of the applicable Guideline range as determined by the Court. (Plea Agmt. §§ 10(b), 10(c)). The parties also stipulated that Larson would be eligible for a three-level reduction for accepting personal responsibility, "contingent upon the defendant providing an appropriate oral or written statement . . . in which the defendant clearly establishes his entitlement to this reduction." (Plea Agmt. § 7(c)). In addition, the government "expressly reserve[d] the right to make known . . . for inclusion in the presentence report . . . any information that the United States believes may be helpful to the Court." *Id.* at § 6(c).

## A.

Larson submitted an amended sentencing memorandum in which he

purported to take "full responsibility" for his crimes. In his statement, however, Larson suggested that the BIA and prior courts should have treated him more forcefully to address his drinking problem. In effect, Larson tried to take less than full responsibility for his criminal conduct.

Not surprisingly, in its response to Larson's sentencing memorandum, the government informed the trial court that Larson's statement was "very different from" accepting full responsibility, and that "there is no other way to interpret [his] complaints about the BIA and the numerous courts" except as an attempt "to shift - or at least share - the blame for murders that were the result of his own handiwork." The government explained how these facts contradicted Larson's statement that he had accepted personal responsibility for his criminal conduct. Larson contends the government's statements violated the plea agreement.

Although the government may not "rely on a hyper-literal construction" of a plea agreement, *see United States v. Reyes-Pena*, 216 F.3d 1204, 1212 (10th Cir. 2000), a reasonable interpretation of the agreement in this case shows that the government did not breach its promises by making such statements. As noted above, the agreement obligated the government not to file a motion for upward departure or oppose a sentence at the lowest end of the applicable Guideline range. It did not say the government must remain silent on all sentencing matters or refrain from making arguments regarding reductions to the applicable

sentencing level. The Guidelines themselves treat reductions as distinct from departures and decisions by the sentencing judge to sentence at one end of the Guideline range or the other. *See* U.S.S.G. § 1B1.1.

Moreover, the plea agreement stated that the three-level reduction for accepting personal responsibility was contingent upon Larson "providing an *appropriate* oral or written statement" in which he "clearly establishes his entitlement to this reduction." (Plea Agmt. § 7(c) (emphasis added)). The agreement further acknowledged that the government reserved the right to comment on the appropriateness of Larson's sentencing memorandum. The government's written submission was well within what the plea agreement allowed.

Accordingly, we conclude that the government's response to Larson's sentencing memorandum did not violate the plea agreement.[1]

B.

At the sentencing hearing, the court announced that it was considering a two-level upward departure. Defense counsel engaged in a lengthy discussion with the court about the substance and process surrounding a departure, after which both parties and the court acknowledged that the plea agreement precluded

---

[1] To the extent the government did argue against reduction, it was not particularly effective; the court granted a three-level downward adjustment for Larson's acceptance of responsibility.

the government from moving for an upward departure or opposing a sentence at the lowest end of the Sentencing Guidelines. The following exchange then occurred:

THE COURT: Mr. Fouratt, do you have anything you'd like to say?

PROSECUTION: Your honor, paragraph 10B of the plea agreement states that the United States will not file a motion for upward departure.

THE COURT: It will not oppose a sentence at the low end of the guidelines.

PROSECUTION: That's right. I just wanted to be clear for the record that the Court's decision, if it does decide to upward depart, was done on the Court's own motion, and that the government has done nothing in the way of moving for an upward departure. . . . Your honor, if you are inquiring of the United States whether there is—whether the bases that you have identified are appropriate grounds for upward departure, I suppose I need you need to tell me to comment on that.

THE COURT: Do you contend, or do you disagree that those are appropriate grounds?

PROSECUTION: I do not disagree that those are appropriate grounds, Your Honor. I believe that there is evidence in the case that would support the Court doing that on either or both grounds.

THE COURT: All right.

PROSECUTION: I would add, however, Your Honor, that my brief review of the case law says that if the Court departs upward on more than one ground, it is helpful, at least for appellate review, that the Court identify how much of the departure is attributable to one ground and how much is attributable to the other, if they can be separated.

(3 R. at 19–20.)

Larson argues that the government used the trial court's open-ended inquiry

to manipulate the court into asking a question about the departure that the government then used to make an "end-run" around the promises made in the plea agreement. The government argues that it was "merely respond[ing] to a legal question the judge posed," and that it said nothing that could be reasonably interpreted as opposing a sentence at the low end of the Guidelines in violation of the plea agreement.

The transcript reveals that the court's question came at the end of a discussion regarding the proposed upward departure. In response, the prosecutor attempted to clarify that in the event the court decided to upward depart, such departure was done on the court's own motion and not that of the government. The prosecutor also stated that the court would have to ask him to comment on whether the bases identified by the court are appropriate grounds for upward departure. This suggests that the prosecutor was making a good faith effort to comply with the plea agreement.

Even assuming the prosecutor somehow manipulated the court into asking about a departure, the prosecutor's response cannot be construed as effectively moving for an upward departure or opposing a sentence at the low end of the Guidelines. He simply told the court he believed there was evidence to support its proposed departure.

In our view, the record is clear that the upward departure was proposed by

the court and that the government responded to the court's question in good faith. Because the government need not "stand mute under all circumstances," and "'cannot be penalized for correctly stating the legal issues,'" *Brye*, 146 F.3d at 1211 (quoting *Svacina*, 137 F.3d at 1185), we conclude the government's statements did not violate the plea agreement.

**IV.**

The Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108-21, 117 Stat. 650, states, among other things, "[a] district court to which a case is remanded . . . shall not impose a sentence outside the applicable guideline range except upon a ground that . . . was held by the court of appeals, in remanding the case, to be a permissible ground of departure." 18 U.S.C. § 3742(g)(2). Therefore, although we reverse the district court's sentencing because of inadequate notice, we also conclude that the grounds used by the district court for departure are "permissible grounds" under § 3742(g)(2)(B). While we hold that the facts and circumstances in this case may form the basis for a departure, we emphasize that on remand the district court should make its departure decision, if any, after the court has given adequate notice, held a hearing and considered all the evidence.

Since the enactment of the PROTECT Act, we generally review a district court's departure from the Sentencing Guidelines *de novo*. *United States v.*

-14-

*Jones*, 332 F.3d 1294, 1299 (10th Cir. 2003). Although in *Jones* this Court laid out a four-step process for conducting that review,[2] in this case, where we are only deciding whether the stated grounds for departure are permissible, we need not engage in an analysis of all four steps.

Because we reverse the increased sentence on notice grounds, the first and fourth steps are at this point irrelevant, although the district court must be mindful of its responsibility to set forth specific reasons for any departure. *See* § 3742(G)(2)(A); *United States v. Goldberg*, 295 F.3d 1133, 1138 (10th Cir. 2002). Similarly, the "heartland" determination of whether "the factors the district court relied upon" were "justified by the facts of the case" required by

---

[2] The four steps are:
First, we must ascertain whether the district court set forth, in a written order of judgment, its specific reasons for departure. 18 U.S.C. § 3742(e)(3)(A); 18 U.S.C. § 3553(c)(2). Second, we must consider whether the factors the district court relied upon "advance the objectives set forth in section 3553(a)(2)," 18 U.S.C. § 3742(e)(3)(B)(i), and ensure that the district court's reliance on those factors did not violate any specific prohibition in the Guidelines, *Koon v. United States*, 518 U.S. 81, 106 (1996). . . . Third, we must consider whether the factors the district court relied upon were "authorized under section 3553(b)" and "justified by the facts of the case." 18 U.S.C. § 3742(e)(3)(B)(ii)-(iii). . . . This third step in the analysis is commonly called the "heartland" determination. *See* [*United States v. Collins*, 122 F.3d 1297, 1303 (10th Cir. 1997)] . . . . Finally, we must ask whether the district court's sentence "departs to an unreasonable degree from the applicable guidelines range." 18 U.S.C. § 3742(e)(3)(C); *accord Collins*, 122 F.3d at 1303 (reviewing court must determine "whether the degree of departure is reasonable").
*Jones*, 332 F.3d at 1299-1300.

-15-

*Jones*'s third step cannot be made until the district court has held an appropriate hearing. *Jones*, 332 F.3d at 1299. In order to determine whether U.S.S.G. §§ 5K2.14 and 5K2.5 were permissible grounds for departure we therefore limit our consideration to whether these factors advance the purposes of § 3553(a)(2) and whether they violate any prohibition of the Guidelines.

The Guidelines set forth a number of factors that are encouraged bases for departure because they may not have been adequately accounted for in specific Guidelines. *See* U.S.S.G. § 5K2.0; 18 U.S.C. § 3553(b). Endangering the public (§ 5K2.14) and causing damage to property (§ 5K2.5) are two of these encouraged factors. When such a factor is present "the sentencing court is authorized to depart if the applicable guideline does not already take it into account." *Koon*, 518 U.S. at 96.

Larson argues that the Guidelines for second degree murder already encompass both grounds used by the district court to support departure. Specifically, he argues that the second degree murder charge differs from a manslaughter charge in that it takes public endangerment into account, and that § 5K2.5 is intended to apply only where the property damage caused is significantly greater than the other harm taken into account by the conviction.

We disagree. Unlike § 2A1.4, which provides different offense levels in manslaughter cases depending on the level of negligence or recklessness

involved, the second degree murder Guideline does not contain any language that would expressly guide a judge to take into account the danger imposed on the general public. *See* U.S.S.G. § 2A1.2 (imposing single base offense level of 33 for any case of second degree murder). Where the public safety "was significantly endangered" by a defendant in the course of committing second degree murder, only § 5K2.14 allows the court to factor this additional peril into the sentence. Therefore, if the evidence supports the conclusion that Larson's drunken driving significantly endangered the public safety, § 5K2.14 is a permissible ground for an upward departure.

We likewise find that § 5K2.5 is a permissible ground for departure. That section allows a departure "[i]f the offense caused property damage or loss not taken into account within the guidelines." U.S.S.G. § 5K2.5. Again, there is nothing in the second degree murder Guideline to suggest that damage to property is subsumed within a conviction for that crime. If the evidence is sufficient after the hearing below to support a finding that Larson caused property damage in the course of his crime, § 5K2.5 would be a permissible ground for a departure.

## V.

While we hold that the government did not violate Larson's plea agreement, we conclude that the district court failed to provide adequate notice of its intent to

seek an upward departure of Larson's sentence under the Sentencing Guidelines. This matter is REMANDED for resentencing in the district court after reasonable notice of the grounds for departure.

ENTERED FOR THE COURT

PER CURIAM

No. 02-2240, <u>United States of America v. Larson</u>
**LUCERO,** Circuit Judge, dissenting.

Save as to part III B, I join the panel opinion.  In my view, with regard to part III B, the government's argument that it was "merely respond[ing] to a legal question the judge posed," does not wash.  Far from being a mere response to a legal question, the government's answer constitutes a "thinly veiled end-run" around the government's promise not to seek an upward departure, and thus warrants a remand for resentencing.  <u>United States v. Bowe</u>, 257 F.3d 336, 346 (4th Cir. 2001).

As the colloquy quoted in part III B illustrates, the court did not force the government to take a position; rather, the prosecutor sought out the opportunity to provide his views on the appropriateness of an upward departure in response to an open-ended question from the court: "Do you have anything you'd like to say?"  (3 R. at 19.)  When faced with such an open-ended question, the government is bound to respond only if it can hold true to the letter and spirit of the plea agreement.  In this instance, however, instead of saying "no," the prosecutor used the question as a springboard for legal commentary.  While the government need not "stand mute under all circumstances," <u>United States v. Brye</u>, 146 F.3d 1207, 1211 (10th Cir. 1998), there are times when standing mute is exactly what the plea agreement requires.  By effectively attempting "to persuade the court in a way that the government had promised it would not do," <u>United States v. Hawley</u>, 93 F.3d 682,

693 (10th Cir. 1996), the prosecutor "crossed the proverbial line." <u>Brye</u>, 146 F.3d at 1213 (quotation omitted). Accordingly, I would remand the case for resentencing. <u>Santobello v. New York</u>, 404 U.S. 257, 263 (1971), dictates that such resentencing be conducted by another sentencing judge.