**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 16 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

FREDERICK BRYE,

      Defendant-Appellant.

No. 97-1094

---

**Appeal from United States District Court**
**for the District of Colorado**
**(D.C. No. 96-CR-59-S)**

---

Nancy Holton, Assistant Federal Public Defender (Michael G. Katz, Federal Public Defender, with her on the brief), Denver, Colorado, for the appellant.

John M. Hutchins, Assistant United States Attorney (Henry L. Solano, United States Attorney, and Craig F. Wallace, Assistant United States Attorney, with him on the brief), Denver, Colorado, for the appellee.

---

Before **HENRY**, **BARRETT**, and **BRISCOE**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

---

Defendant Frederick Brye entered into a plea agreement and pleaded guilty to being a felon in possession of ammunition, a violation of 18 U.S.C. § 922(g). He was sentenced to sixty months' imprisonment and three years' supervised release. He appeals his sentence, contending the government breached the plea agreement and the district court erred in denying a downward departure for pre-indictment delay. We conclude the government did breach the plea agreement and remand for resentencing. We dismiss for lack of jurisdiction defendant's claim that the court erred in denying a downward departure.

I.

Defendant and his brother Bond Brye had a heated argument on June 14, 1993, concerning Bond's relationship with defendant's girlfriend. Bond purportedly struck and threatened to kill defendant. Defendant telephoned Fidel Garner around 8:00 p.m. and asked him to bring "his .45." He again called Garner around 10:45 p.m. and told him he needed the gun because Bond had kicked him, shot at him, threatened to kill him, and chased him with a gun. The government had a Title III wiretap on Garner's telephone line, which was unknown to either Garner or defendant, and intercepted both of the conversations. Based on this information, the police stopped defendant's car and found a .45 pistol and two rounds of Winchester Silver Tip ammunition inside the car.

Sometime later in 1993, defendant was taken into state custody for

violation of state law where he remained until early 1996. He was not charged in federal court with being a felon in possession of a firearm until February 14, 1996. Based on the long delay between the time the offense was committed and the date of the indictment, defendant moved to dismiss the indictment for excessive pre-indictment delay. The court denied the motion because defendant could not establish the government intentionally delayed seeking an indictment to gain a tactical advantage. Immediately before trial began on October 7, 1996, defendant entered into a plea agreement and pleaded guilty to being a felon in possession of ammunition.

Prior to sentencing, defendant filed a motion for downward departure from the recommended sentencing guidelines because (1) he committed the offense while under coercion and duress, [1] (2) the government's pre-indictment delay prejudiced his defense, and (3) the totality of the circumstances justified a downward departure. The court ultimately denied defendant's request for

---

[1] There is no question that Bond was an extremely dangerous person. Defendant argued Bond's dangerous nature forced defendant to obtain a gun to protect himself and he committed the offense while under "duress." Defendant presented evidence at sentencing that Bond had attempted to strangle their sister and had shot at their mother during the same time period that Bond had threatened defendant. The taped conversations between Garner and defendant also clearly indicated defendant was afraid of Bond. The police observed defendant being chased by an unidentified black male in the area around defendant's house and defendant's mother's house on the date of the offense. Bond committed suicide on September 27, 1993, apparently suffering from mental illness.

downward departure.

## II.

Defendant argues the government violated the plea agreement because the prosecutor opposed downward departure during sentencing. "Whether government conduct has violated a plea agreement is a question of law which we review de novo." United States v. Hawley, 93 F.3d 682, 690 (10th Cir. 1996).

Where the government obtains a guilty plea predicated in any significant degree on a promise or agreement of the prosecuting attorney, such promise must be fulfilled to maintain the integrity of the plea. See Santobello v. New York, 404 U.S. 257, 262 (1971); United States v. Hand, 913 F.2d 854, 856 (10th Cir. 1990); see also United States v. Peglera, 33 F.3d 412, 414 (4th Cir. 1994) ("Because a government that lives up to its commitments is the essence of liberty under law, the harm generated by allowing the government to forego its plea bargain obligations is one which cannot be tolerated."). To determine whether a breach has, in fact, occurred, we apply a two-step process: (1) we examine the nature of the government's promise; and (2) we evaluate this promise in light of the defendant's reasonable understanding of the promise at the time the guilty plea was entered. United States v. Rockwell Int'l Corp., 124 F.3d 1194, 1199 (10th Cir. 1997), cert. denied 118 S. Ct. 1559 (1998).

We apply general principles of contract law to define the nature of the

government's obligations in a plea agreement. Hawley , 93 F.3d at 692; see Doe v. United States , 51 F.3d 693, 701 (7th Cir. 1995) ("Plea agreements are contracts, which means that the first place to look in determining the extent of the government's promises under the [] agreement is the language of the agreement itself."). Accordingly, we determine the government's obligations by reviewing the express language used in the agreement. See United States v. Courtois , 131 F.3d 937, 939 (10th Cir. 1997) ("We agree with the other circuits that have considered this issue and have found that whether a plea agreement unequivocally obligates the government to provide defendant with the opportunity to provide substantial assistance turns on the specific language of the agreement."); Rockwell , 124 F.3d at 1200; United States v. Vargas , 925 F.2d 1260, 1266-67 (10th Cir. 1991); United States v. Easterling , 921 F.2d 1073, 1079 (10th Cir. 1990). We will not allow the government to rely "upon a 'rigidly literal construction of the language' of the agreement" to escape its obligations under the agreement. Hand, 913 F.2d at 856 (quoting United States v. Shorteeth , 887 F.2d 253, 256 (10th Cir. 1989)). As with the interpretation of any contract, we also apply the maxim that the agreement should be construed against its drafter. Hawley , 93 F.3d at 690. [2]

_____

[2] It is not entirely clear who drafted the plea agreement here, but at one point in the sentencing hearing the prosecutor seemed to imply he had authored it.

(continued...)

-5-

With these general principles in mind, we turn to the language in the plea agreement here. The agreement obligated the government to:

> A. Dismiss, at sentencing, the [i]ndictment . . .;
> B. File no further charges against [defendant] based upon what [was known at that time] of his criminal misconduct . . .;
> C. Stipulate, under Fed. R. Crim. P. 11(e)(1)(c), to a sentence of no more than sixty (60) months;
> D. Agree that defense counsel may argue for an extraordinary departure under Section 5K2.0 *et seq*., and the government will defer to the Court's determination of this point.
> E. Consider providing defendant an opportunity to debrief regarding his knowledge of drug trafficking activities, . . . and agree to file at sentencing a motion under Section 5K1.1 of the U.S. Sentencing Guidelines, recommending a downward departure from defendant's resulting guideline range, if, in the government's sole and good faith discretion, defendant has provided "substantial assistance" in the investigation of others.

Record I, Doc. 18, at 1-2. Defendant agreed to plead guilty to a one-count information which charged him with being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g).

Defendant argues the government violated part D of the agreement. The parties disagree on the meaning of the word "defer" and what departure determination the government agreed to defer to the court. The government argues this provision referred only to defendant's request for downward departure based on coercion or duress, while defendant argues the government agreed to

---

[2](...continued)
See Record VII at 6-7 ("We drafted an information . . . . I told her we put it in the plea agreement that she could do that. . . . I indicated in the plea agreement.")

defer on all possible bases for downward departure under U.S.S.G. § 5K2.

The word "defer" means "to refer or submit for determination or decision" or "to submit or yield through authority, respect, force, awe, [or] propriety." Websters Third New International Dictionary 591 (1993). The government adopts this definition and claims it agreed to submit the question of whether defendant was eligible for downward departure to the court for determination. Although this argument seems to comport with the dictionary definition of "defer," it is nonsensical when viewed in the context of sentencing proceedings. The sentencing court *already* possessed the authority to determine whether defendant was eligible for downward departure. Therefore, interpreting the plea agreement as the government urges renders part D superfluous, which is obviously not in accord with general principles of contract law. See Restatement (Second) of Contracts § 203(a) (1979) ("an interpretation which gives a reasonable, lawful, and effective meaning to all the terms [of an agreement] is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect"); New Valley Corp. v. United States, 119 F.3d 1576, 1580 (Fed. Cir. 1997) ("An interpretation that gives a reasonable meaning to all of [the contract's] parts is preferred to one which leaves a portion of the [contract] inoperative, void, meaningless, or superfluous."); see also United States v. Bunner, 134 F.3d 1000, 1006 n.5 (10th Cir.) ("We will not construe a statute in a way that renders words

or phrases meaningless, redundant, or superfluous."), *petition for cert. filed* ____ U.S.L.W. ____ (U.S. April 24, 1998) (No. 97-8828).

Therefore, "defer" must have some additional meaning in the present context. This additional meaning can, ironically, be gleaned from the government's description of its obligations at the sentencing hearing:

> I indicated in the plea agreement that the government would defer to the court's finding on [whether defendant is entitled to a downward departure for coercion or duress]. Essentially, we are not going to take any particular position. You know, I am not calling any witnesses or putting on any exhibits today. I may point out a few things. But essentially, it's [defendant's] motion. Something [he] wanted to do, and we agreed to it as part of the plea agreement. . . . The Court will make the ultimate finding.

Record VII at 7. Later, the government stated: "I don't think [the plea agreement] precludes me from making comments. I think it precludes me from taking any particular position." Id. at 50.

As the government correctly noted during sentencing, a plea agreement requiring the government to "defer" to the court's determination of an issue does not require the government to stand mute under all circumstances. Certainly the government is entitled, perhaps even obligated as an officer of the court, to correct factual and legal inaccuracies for the court. See United States v. Svacina, 137 F.3d 1179, 1185 (10th Cir. 1998) ("The government cannot be penalized for correctly stating the legal issue to be addressed by th[e] court."); United States v. Jimenez, 928 F.2d 356, 363 (10th Cir. 1991) (government obligated to inform

-8-

sentencing court of relevant, derogatory information about defendant that prosecutor learned after plea agreement); Hand, 913 F.2d at 856 (government not obliged to "stand mute in the face of incorrect or misleading testimony offered before the trial court"); United States v. Stemm , 847 F.2d 636, 639 (10th Cir. 1988) ("Disclosure of information as to the nature of the offense and each defendant's role is proper and within the Government's duty to provide, despite a promise that the Government would make no recommendation as to sentence."). However, if the government has agreed to "defer to the court's determination" of an issue, its authority to comment during a defendant's sentencing stops there. The government cannot oppose the defendant's motion, in any fashion, after agreeing to "defer" to the court's determination on the issue. This means the government may not call witnesses, present exhibits, or make any legal arguments in opposition to defendant's motion. As we explained in Hawley , the government breaches an agreement "not to oppose" a motion when it makes statements that "do more than merely state facts or simply validate [] facts found in the Presentence Report" and "provide[s] a legal 'characterization' of those facts [or] 'argue[s] the effect' of those facts to the sentencing judge." 93 F.3d at 693.

Although we have determined the government agreed not to oppose defendant's motion for downward departure, it is also necessary to determine whether the government agreed not to challenge downward departure on all

-9-

possible grounds or merely with respect to coercion or duress.  The government argues it only agreed to defer to the court's determination with respect to coercion or duress and, therefore, even if it opposed the motion based on pre-indictment delay and the totality of the circumstances, it did not violate the plea agreement. Again, we must examine the precise language of the agreement to resolve the dispute.

The government agreed not to challenge defendant's motion for downward departure pursuant to "Section 5K2.0 *et. seq.* "  This language seems plain; however, § 5K2.0 does not set forth a specific basis for departing from the guidelines.   Rather, § 5K2.0 is a policy statement that generally outlines considerations the sentencer should contemplate when determining whether to grant a defendant a downward departure under any of the specific rationales listed in other sections of the subchapter that follow § 5K2.0.      Each of the remaining sections in the subchapter, §§ 5K2.1-5K2.18, discusses a specific rationale for departure.  Coercion and duress are addressed in § 5K2.12.

Not only does § 5K2.0 fail to specifically address a particular justification for departure, the agreement specifies "5K2.0 *et. seq.* "  Record I, Doc. 18, at 2. *Et Seq.* is an abbreviation for "et sequentes" or "et sequentia," which means "and the following." Black's Law Dictionary 553 (6th ed. 1990).  Here, "5K2.0 *et. seq.* " can be reasonably interpreted to include §§ 5K2.0 through 5K2.18.

-10-

Therefore, based on the language in the agreement, we conclude the government agreed to defer to the court's determination as to whether defendant deserved an extraordinary downward departure under *any* of § 5K2.'s subsections. See <u>United States v. Williams,</u> 102 F.3d 923, 927 (7th Cir. 1996) ("We review the language of the plea agreement objectively and hold the government to the literal terms of the plea agreement.").

Such an interpretation appears to comport with the parties' reasonable understanding of the agreement at the time the guilty plea was entered. At the change of plea hearing, the government stated it understood the plea agreement as obligating it to:

> [allow] defense counsel [to] argue for an extraordinary departure downward under Section 5K2.0. The burden being on the defense counsel, of course, to convince the Court that [it] would apply, and the government will simply defer to the Court's determination of this point.

Record V at 9. This was also defendant's understanding of the agreement. *Id.* at 10. Therefore, based on the plain language of the agreement and the parties' apparent understanding of the agreement at the change of plea hearing, the government agreed not to oppose defendant's argument that he was entitled to a downward departure under *any* of the subsections listed after § 5K2.0.

Next, we consider whether the government kept its promise. At the sentencing hearing when defendant argued he should receive a downward

-11-

departure based on the government's pre-indictment delay, the government argued federal prosecution was delayed because Garner had become a confidential informant and defendant's prosecution would require disclosure of Garner's status. See Record VI at 50-52 (arguing government did not delay prosecution for tactical reasons); Record VI at 58-59 (arguing defendant not prejudiced by government's delay); VII at 10 (announcing plan to present testimony to oppose motion) . The government also called an F.B.I. agent to testify about Garner's role in the investigation to support its position. By arguing the government did not delay prosecution for tactical reasons and presenting testimony to support its position, the government clearly breached its plea agreement with defendant to "defer to the court's determination" on a downward departure for pre-indictment delay. See Hawley , 93 F.3d at 693 (government's comments that "characterize the facts" and "argue a conclusion" breach plea agreement to not take position on issue); c.f. Hand , 913 F.2d at 856 ("The prosecutor here did not characterize the evidence elicited on cross examination, nor did he argue the effect of such evidence to the sentencing judge.").

The government also breached the plea agreement with respect to defendant's motion to depart for coercion and duress. The following statements, made in the government's sentencing statement, clearly demonstrate the government crossed the proverbial "line":

Section 5K2.12 speaks of "serious" duress. The guideline drafters further provided that the extent of departure, if any, should be based upon the reasonableness of the defendant's conduct and whether it would have [been] less harmful.

One of the best methods for the court to determine this issue is to review the defendant's own words, captured in a wiretap, as he spoke those words just prior to, and after, the car chase. They reflect defendant's decisions in dealing with what had, undisputably, been a long-standing "family" matter, potentially involving inter-family violence. The real issue seems to be whether the "duress" was so extreme that defendant acted reasonably by breaking the law to protect himself and others, or whether this was a case of mutual combatants.

Record I, Doc. 26, at 4-5. While this statement does not explicitly state defendant should not receive a downward departure based on coercion and duress, its implication is clear. See Hawley, 93 F.3d at 693 (prosecutor's purported factual information provided to court was "a thinly disguised, if disguised at all, effort to persuade the court in a way that the government had promised it would not do"). By pointing out the "real issue" and highlighting the "defendant's own words" as "one of the best methods for the court to determine this issue," the government was obviously, albeit subtly, taking a position on whether defendant should receive a downward departure for coercion and duress. Perhaps the best indication of the fact that the government's statements were meant to persuade is that the court ultimately resolved defendant's motion by reviewing defendant's "own words" in the tape-recorded conversations and concluding the brothers had a "mutual disagreement." See Record VII at 59-65.

-13-

When the government has breached a plea agreement, it is generally preferable to remand the case to the district court for its determination as to whether defendant should be resentenced by a different judge or should be allowed to withdraw his guilty plea. Hawley, 93 F.3d at 694 ("Providing this type of latitude for the district court on remand is preferable in light of the district court's position with respect to the case."). When the government's breach is particularly egregious or intentional, we will allow defendant to withdraw the guilty plea. See id.; see, e.g., United States v. Cooper, 70 F.3d 563, 567 (10th Cir. 1995). Since it does not appear the government's breach was egregious or intentional, but rather, was based on misinterpretation of the plea agreement, we remand only for resentencing by a different judge.

III.

Defendant also argues the district court "applied the wrong legal test in deciding whether to depart based on three years of pre-indictment delay." Br. at 8. "[A] discretionary decision not to depart downward is not reviewable unless the record shows that the district court erroneously believed that the Guidelines did not permit a departure." United States v. Banta, 127 F.3d 982, 983 n.1 (10th Cir. 1997). Apparently, defendant is arguing the court's understanding that it could not grant downward departure for pre-indictment delay unless defendant established the government delayed to gain a tactical advantage and that

-14-

defendant suffered prejudice as a result of the delay was erroneous.

Clearly, the district court understood it could grant defendant's motion for downward departure based on pre-indictment delay. The court specifically stated: "As far as the preindictment delay, . . . . there is a provision under 5K2.12 under the case law and under the guidelines where the District Court [has] the ability to depart downward on these grounds." Record VII at 57. However, the court also clearly believed it could not grant departure for pre-indictment delay unless defendant proved the government intentionally delayed to gain a tactical advantage and that he suffered prejudice as a result of the delay.

When seeking dismissal of an indictment based on pre-indictment delay, a defendant must establish the government intentionally delayed for tactical reasons and that the delay caused him actual prejudice. United States v. Trammell , 133 F.3d 1343, 1351 (10th Cir. 1998). However, a few appellate courts have suggested a less stringent standard may apply at sentencing when a defendant is seeking a downward departure based on pre-indictment delay. See, e.g., United States v. Saldana , 109 F.3d 100, 104 (1st Cir. 1997) ("It seems to us possible that someone with time and ingenuity could construct a case where a careless or even an innocent delay produced sentencing consequences so unusual and unfair that a departure [without a showing of government intent] would be permissible."); United States v. Martinez , 77 F.3d 332 (9th Cir. 1996) . This court has not

specifically addressed whether a different standard may apply to pre-indictment delay when that question is asserted as a basis for downward departure. We need not decide this issue in the present case because, even if we were to adopt a more lenient standard in the sentencing context, defendant would not be entitled to downward departure. The delay defendant suffered "was neither extreme nor implicitly sinister," but rather the type of delay that is ordinary in "the fabric of criminal proceedings." Saldana, 109 F.3d at 104.

Defendant has not demonstrated the district court misunderstood the guidelines or its authority to act under the guidelines and, therefore, we lack jurisdiction to review the district court's discretionary decision not to depart downward. See Banta, 127 F.3d at 983 n.1.

IV.

We REMAND to the district court for resentencing by a different judge based on the government's violation of the plea agreement, and DISMISS for lack of jurisdiction defendant's claim that the district court abused its discretion in denying downward departure based on pre-indictment delay.