**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 23 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

ROBERT HENRY WERNER, also
known as Redelk Ironhorse Thomas,

      Defendant - Appellant.

No. 01-4202

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 2:00-CR-284-Conway)**

---

**Submitted on the briefs:**[*]

Vicki Mandell-King, Assistant Federal Public Defender, Chief, Appellate
Division, and Michael G. Katz, Federal Public Defender, Denver, Colorado, for
Defendant - Appellant.

Felice John Viti, Assistant United States Attorney and Paul M. Warner, United
States Attorney, Salt Lake City, Utah, for Plaintiff - Appellee.

---

Before **KELLY**, **BALDOCK**, and **HENRY**, Circuit Judges.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1 (G). The cause therefore
is ordered submitted without oral argument.

**KELLY**, Circuit Judge.

Defendant-Appellant Redelk Ironhorse Thomas, a.k.a. Robert Henry Werner, pursuant to a written plea agreement, pleaded guilty to one count of mailing threatening communications in violation of 18 U.S.C. § 844(e).  He was sentenced to a term of imprisonment of 24 months followed by three years of supervised release.  On appeal, Mr. Thomas contends that the government violated the terms of the plea agreement by not allocuting at the sentencing hearing.  We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and affirm.

Background

Mr. Thomas was charged in a three-count indictment with mailing threatening communications in violation of 18 U.S.C. § 876 (Count I), and mailing threatening communications in violation of 18 U.S.C. § 844(e) (Counts II and II).  He entered into a plea agreement with the government whereby he would plead guilty to Count Two.  In exchange, the government agreed to several obligations, including the following: "The government will recommend that [Mr. Thomas] be sentenced at the low end of the applicable guideline range."  I R. Doc. 69 at 6.  During the change of plea hearing, the district court carefully

reviewed the agreement with Mr. Thomas, expressly reminding him that "[t]he government will also recommend that you be sentenced at the low end of the applicable Guideline range." IV R. at 10. At the conclusion of the hearing, Mr. Thomas signed the plea agreement and the court accepted his guilty plea.

At sentencing on August 23, 2001, Mr. Thomas spoke for over 55 minutes to announce a range of objections to the Presentence Report ("PSR"), his treatment in confinement and other issues not relevant here. V R. at 31. The PSR expressly noted that "the government also agreed . . . to recommend [Mr. Thomas] be sentenced at the low end of the applicable guideline range." VI R. at 2. During the hearing, the district court indicated that it had read Mr. Thomas' PSR "about 3 times." V R. at 30. Mr. Thomas twice expressed his agreement with the PSR's conclusion regarding the appropriate sentencing range of 18 to 24 months: "the 18 to 24 I'm not going to dispute that," V R. at 29, and "I agree with the 18 to 24 months." Id. at 41. During the sentencing hearing, (1) the government did not verbalize its recommendation that Mr. Thomas be sentenced at the low end of the range, (2) Mr. Thomas did not object to the government's failure to do so, and (3) the court itself made no specific reference to the sentencing recommendation. Mr. Thomas received a sentence of 24 months imprisonment, the highest permitted under the guideline range. Id.

<u>Discussion</u>

A claim that the government has breached a plea agreement is a question of law we review de novo, even where, as here, the defendant failed to object at the time of the alleged breach. <u>United States v. Peterson</u>, 225 F.3d 1167, 1170 (10th Cir. 2000); <u>see also</u> <u>id.</u> at n.2 (noting the circuit split on whether to apply a plain error analysis, as do a majority of circuits, or de novo review).

Government promises in a plea agreement must be fulfilled to maintain the integrity of the plea. <u>Santobello v. New York</u>, 404 U.S. 257, 262 (1971). We apply a two-step analysis to determine if the government breached a plea agreement: (1) we examine the nature of the government's promise; and (2) we evaluate this promise in light of the defendant's reasonable understanding of the promise at the time the guilty plea was entered. <u>United States v. Brye</u>, 146 F.3d 1207, 1210 (10th Cir. 1998). Principles of general contract law guide our analysis of the government's obligations under the agreement. Thus, in assessing whether the government has breached the agreement, we look first to the express terms of the agreement, and if applicable, we construe any ambiguities against the government as the drafter of the agreement. <u>Id.</u>

The plea agreement contained the following language: "The government will recommend that [Mr. Thomas] be sentenced at the low end of the applicable guideline range." I R. Doc. 69 at 6. Mr. Thomas contends that this required the

government to allocute in favor of sentencing at the low end of the guidelines. Our holding in United States v. Smith, 140 F.3d 1325 (10th Cir. 1998), controls our analysis of this provision. In Smith, we held that "the term 'recommendation' in a plea agreement does not require the prosecutor to allocute in favor of specific adjustments in the defendant's sentence if the recommendations are contained in the PSR and the prosecutor does not allocute against an agreed-upon adjustment." 140 F.3d at 1327. We noted that "[d]efendants should be advised that when there is no specific statement in a plea agreement that the government must allocute in favor of its recommendation(s) at a sentencing hearing, the government can satisfy the term 'recommendation' by having its recommendations included in the PSR, which is then called to the attention of the sentencing court." Id.

In this case, the government agreed in the plea agreement to recommend that Mr. Thomas be sentenced at the low end of the guideline range. The sentencing judge was aware of this recommendation, having advised Mr. Thomas of it during the change of plea hearing. Furthermore, the recommendation was included in the PSR, which the sentencing judge reviewed immediately prior to sentencing. The plea agreement contained no specific language requiring the government to allocute at sentencing and the government did not allocute against the recommendation. In light of Smith, the legal implications of the government's promise are clear. Mr. Thomas' reasonable expectations

concerning the government's promise were fulfilled. His failure to object at sentencing is but further evidence that his expectations of the government were satisfied. As we noted in Smith, the sentencing judge may exercise his discretion at sentencing to ignore the government's recommendation without transforming the prosecutor's silence into a breach of the plea agreement. 140 F.3d at 1327.

Contrary to the dissent, we will not presume that an experienced district judge sentenced Mr. Thomas without awareness of the plea agreement, particularly when the terms of that agreement were contained in the PSR. No matter how much we deconstruct its language, Smith still controls this case; "would recommend" as used in Smith, 140 F.3d at 1326, and "will recommend" as used in this plea agreement, are legally indistinguishable. The government's obligation to make a non-binding recommendation was satisfied under the circumstances given our precedent.[1] It is telling that Smith never discusses either the passage of time between the plea hearing and the sentencing hearing, nor the precise language of the plea agreement included in the PSR at issue in that case, for neither factor is legally relevant to the straightforward holding of Smith: "We

_____

[1] Although a divided panel of the Ninth Circuit has held that the district court's awareness of the recommendation contained in the plea agreement is insufficient in the absence of government allocution prior to sentencing, see United States v. Myers, 32 F.3d 411, 413 (9th Cir. 1994) (per curiam), this court declined to follow Myers, citing it as contrary authority in Smith. Smith, 140 F.3d at 1327.

hold that the term 'recommendation' in a plea agreement does not require the prosecutor to allocute in favor of specific adjustments in the defendant's sentence if the recommendations are contained in the PSR . . . ." 140 F.3d at 1327. Apparently, even Mr. Thomas himself no longer believes that the government breached the plea agreement by failing to allocute concerning the recommendation, for he has moved to dismiss this appeal without prejudice, characterizing the issues raised by his able counsel in this appeal as "frivolous."

AFFIRMED. The motion to dismiss the appeal is DENIED.

**01-4202, <u>United States v. Werner</u>**

**HENRY**, Circuit Judge, dissenting**.**

In my view, the plea agreement at issue here required the government, at the sentencing hearing, to recommend that the court sentence Mr. Thomas at the low end of the applicable guideline range. By failing to make this recommendation at the time of sentencing, the government materially breached the plea agreement. I would therefore remand the case to the district court for re-sentencing and direct the government to make the required recommendation. My conclusion is based on a reading of <u>United States v. Smith</u>, 140 F.3d 1325 (10th Cir. 1998), that differs from the majority's, and on the application of standard principles of contract interpretation.

### <u>Smith</u>

Unlike the majority, I believe that this circuit's decision in <u>Smith</u> does not control our analysis. Two important facts distinguish <u>Smith</u> from the instant case.

First, although the majority does not mention it, twelve weeks passed in this case between the change of plea hearing (Rec vol. IV, Plea Hr'g, dated May 31, 2001) and the sentencing hearing (Rev. vol. V, Sentencing Hr'g, dated August 23, 2001). Although the district court recognized the government's promise to make such recommendations at the change of plea hearing, at the sentencing hearing the district court never expressly recognized that promise. With that much time having elapsed between the hearings, I am at least skeptical about

whether the district court at the sentencing hearing recalled with precision what promises it had noted at the change of plea hearing. The case load of federal district court judges is heavy; I would not expect a judge to remember a part of a plea bargain negotiation that was discussed nearly three months earlier.

By contrast, in Smith, the district court *at the sentencing hearing* specifically "noted the statements in the PSR concerning the government's recommendations." Smith, 140 F.3d at 1327. Much as the government tries to *imply* otherwise – "the district court did note, in a sense, the government's recommendations . . . stat[ing]at the sentencing hearing that it had read the PSR 'about three times,'" Aple's Br. at 14-15 n.6 – the majority fails to point to, and the record nowhere includes, a scintilla of specific evidence that the district court at the sentencing hearing acknowledged the recommendations.

Second, the panel in Smith construed different contractual language than the contract at issue here. In Smith, we considered the meaning of the noun "recommendation" as used in the parties' plea bargain agreement. See Smith, 140 F.3d at 127. Here, the dispute is over the meaning of the future tense verb in the plea agreement's statement that the government "will recommend" the designated sentencing terms. Rec. vol. I, doc. 69, at 6 (Plea Agreement, dated May 31, 2001). While the phrase "will recommend" is obviously grammatically related to the language at issue in Smith, it is not identical. Thus, we must construe the plea

agreement in this case to properly resolve this appeal.

**Contract Principles**

The majority states, and I agree, that "[p]rinciples of contract law guide our analysis of the government's obligations under the agreement," Maj. Op. at 4, and that "(1) we must examine the nature of the government's promise; and (2) we evaluate this promise in light of the defendant's reasonable understanding of the promise at the time the guilty plea was entered." United States v. Brye, 146 F.3d 1207, 1210 (10th Cir. 1998). However, citing to Smith, the majority unfortunately discards this framework, excerpting only one sentence of the relevant language in the plea agreement, and concluding that the language of the PSR is not "legally relevant." Op. at 6.

I disagree. To determine the nature of the government's promise, we look to the terms of the agreement. Paragraph 13, subsections (a)–(c) of the plea agreement set forth "the terms and conditions of the agreement," and state in full:

> (a) I [Mr. Thomas] will enter a plea of guilty to count II of the Indictment and will withdraw all my motions associated with the instant matter. **At the time of my sentencing, the government will move** this court to dismiss Counts I and III of the Indictment.
>
> (b) **The government will recommend** that I be given a 3 level reduction for acceptance of responsibility, if my offense level is sixteen (16) or greater, or a two level reduction for acceptance of responsibility if my offense level is less than sixteen (16), if I demonstrate an acceptance of responsibility for this offense by virtue of my conduct **up to and including the time of sentencing**. I understand that if, in the opinion of the United States Attorney's

-3-

office, I have not demonstrated an acceptance of responsibility for this offense, the government will not recommend the acceptance of responsibility reduction of the applicable guideline range. I further understand that if the government does not make a recommendation for acceptance of responsibility due to my failure to accept responsibility for this offense, it will **NOT** be a basis for me to withdraw my guilty plea. I understand that the Court need not follow the government's recommendation.

> (c) **The government will recommend that I be sentenced at the low end of the applicable guideline range**.

Plea Agreement, Rec. vol. I, doc. 69, at 12 (dated May 31, 2001) (emphasis supplied, except for "**NOT**").

In interpreting that language, we must construe any ambiguities against the drafting party—here the government. See Brye, 146 F.3d at 1210. This bedrock principle of contract interpretation is recited by the majority, see Maj. Op. at 4, but nowhere reappears in its analysis.

Applying that principle, I see two reasonable interpretations of the "terms and conditions" provisions of the plea agreement. First, these provisions can be read to state that, at the time of the sentencing hearing, the government must take each of the specified actions, (1) moving to dismiss counts I and III of the indictment, (2) recommending a downward adjustment in the offense level, and (3) recommending a sentence at the low end of the guideline range. This first interpretation is supported by the agreement's use of the phrase "up to and including the time of sentencing" in subsection (b): that assessment of Mr.

-4-

Thomas's conduct clearly could not be completed before the sentencing hearing. On this reading of the contract, the government could only fulfill its promise by making a recommendation at sentencing. Second, and in the alternative, these provisions might be read as specifying a time for the recommendation specified in subsection (a) – to dismiss the two counts – but not specifying a time for the recommendations specified in subsections (b) and (c).

The ambiguity here is whether subsection (a)'s "[a]t the time of my sentencing" modifies only (a) or, instead, should be read to say that the government promised to make each of the recommendations referred to in §§ (a)–(c) at the time of the sentencing hearing. Given that ambiguity, we adopt the interpretation adverse to the government as the undisputed drafter of the plea agreement: the government had an affirmative obligation to take all three actions at the time of sentencing. This analysis flows directly from the application of ordinary rules of grammar and from traditional contract principles familiar to our court. See, e.g., Allison v. Bank One-Denver, 289 F.3d 1223, 1244 (10th Cir. 2001) (Kelly, J.) ("The issue is at bottom a question of contract interpretation"). The analysis assuredly does not flow from some form of modern academic deconstruction of the plea agreement. See Black's Law Dictionary 418 (7th ed. 1999) ("**deconstruction**, *n.* In critical legal studies, a method of analyzing legal principles . . . . [a]lso termed *trashing*") (each emphasis in original).

Step two requires that we evaluate the government's promise in light of the defendant's reasonable understanding at the time the guilty plea was entered. See Brye, 146 F.3d at 1210. It was reasonable for Mr. Thomas, at the time of the making of the plea agreement, to have understood that the government would recommend a sentence at the lower end of the guideline range at the sentencing hearing. That is not to say that it was reasonable for Mr. Thomas to expect that the recommendation be done in a certain manner, be it orally or in writing, but that it was reasonable for him to expect that the recommendation would be given when the sentencing hearing took place.

The majority instead relies on Mr. Thomas's failure to object at sentencing, concluding that his failure to object is "further evidence that his expectations of the government were satisfied." Maj. Op. at 6. However, such reliance is problematic because, as the majority notes, we have already rejected an implied waiver rule that would penalize the defendant for failure to raise the issue at the sentencing hearing. See Maj. Op. at 4; United States v. Peterson, 225 F.3d 1167, 1170 (10th Cir. 2000) (holding that "a defendant does not waive his right to appeal a claim that the government has breached a plea agreement when he fails to object to the breach before the district court").

Moreover, while it is true that Mr. Thomas could have communicated the government's recommendation to the court, that speculation is immaterial to the

question of whether the government had an obligation to make the promised recommendation and whether it fulfilled that obligation.  See, e.g., United States v. Roberts, 570 F.2d 999, 1010 (D.C. Cir. 1977) (in holding that the government breached the plea agreement at issue, reasoning that although the government was not the sole party at fault, "nevertheless the defendant was denied his right to have the allocution he had been promised put before the court at the time of sentencing as it clearly would have had the prosecutor addressed the court directly or filed a statement . . . at the time of sentence") (internal quotations and citations omitted).

**Breach**

The government concedes that the government counsel at the sentencing hearing said literally nothing regarding the recommendation and the government does not point to, nor does the record include, any other verbal or written words in which it actually made the recommendation.  Nor does the government argue that it was not required to make the recommendation because Mr. Thomas did not demonstrate his acceptance of responsibility.  Instead, the government simply argues by citation to Smith that it satisfied its obligation under the plea agreement by including the memorialization of the promise in the PSR, which the district court indicated it had reviewed prior to sentencing.

This argument is unpersuasive.  A promise cannot be fulfilled merely by noting that the promise has been made and then doing nothing else.  As I have

noted, the plea agreement refers to a promise to commit a future act, stating that the government "*will* recommend" the designated terms of sentencing. Rec. vol. 1, doc. 69, at 6 (emphasis supplied). The PSR, on which the majority places critical importance in concluding that the government satisfied its obligations under the plea agreement, states only that "[t]he government also agreed to recommend the defendant be given a reduction in the offense level if he demonstrates said acceptance by virtue of his conduct up to and including the time of sentencing and to recommend he be sentenced at the low end of the applicable guideline range." Rec. vol. VI, at 1-2.

Unlike some PSRs, the PSR in this case did not memorialize the government's recommendation; instead, the PSR only noted the government's conditional promise to recommend. And the district court at the change of plea hearing similarly only noted that the government "will" recommend sentencing at the low range of the guideline range. Further, there is no evidence that the plea agreement was attached to the PSR that the district court reviewed prior to sentencing. Moreover, even if the PSR was fresh in the judge's mind at the sentencing hearing, the government's silence could be interpreted to mean that the government was not satisfied with Mr. Thomas's conduct up to and including the sentencing hearing. For all these reasons, I would hold that the government breached the plea agreement.

**Materiality**

As the Supreme Court has explained, because the government breached the plea agreement, "[w]e need not reach the question whether the sentencing judge would or would not have been influenced had he known all the details of the negotiations for the plea." Santobello v. New York, 404 U.S. 257, 262 (1971). This is the rule because "the interests of justice and appropriate recognition of the duties of the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding." Id. See also United States v. Hayes, 946 F.2d 230, 233 (3d Cir. 1991) ("The doctrine that the government must adhere to its bargain in the plea agreement is so fundamental that even though the government's breach is inadvertent and the breach probably did not influence the judge in the sentence imposed, due process and equity *require* that the sentence be vacated.") (internal quotation marks omitted) (emphasis supplied).

However, even if we *were* required to perform a separate materiality analysis, to my mind a broken promise by the government to recommend favorable sentencing terms, in this case that Mr. Thomas be sentenced at the low end of the applicable range, is clearly material. Government recommendations in favor of the defendant at least some of the time influence courts. By denying Mr. Thomas the promised recommendation, the government denied Mr. Thomas and the district court the opportunity to gain the benefit of the government's recommendation to

-9-

the court.  Indeed, Mr. Thomas could have fared no worse: following the government's breach, the district court, having not received the recommendation, sentenced Mr. Thomas to a prison term of 24 months, the absolute high end of the applicable range.

**Remedy**

Because an application of ordinary contract principles leads me to conclude that the government materially breached the agreement, I would remand for resentencing and direct that government to recommend at sentencing that the district court sentence Mr. Thomas at the low end of the 18-24 month range.  See Allen v. Hadden, 57 F.3d 1529, 1534 (10th Cir. 1995) ("If the court finds that the government breached the plea agreement, the court must remand the case either for specific performance or withdrawal of the defendant's guilty plea.").

**Conclusion**

Today's decision is a step in the wrong direction.  Future defendants plea bargaining in this circuit will have less reason to trust the government's promises. As we recognized in United States v. Cooper, 70 F.3d 563, 567 (10th Cir. 1995), "[i]t is critical that the government stand by its agreements . . . . in order to encourage plea bargaining."  Further, requiring that the government follow through on promises that it makes to recommend certain sentencing terms relieves the already burdened district courts from having to elicit or acknowledge

-10-

recommendations that the government has promised it "will" make.  Most

fundamentally, "prosecutorial conduct should set the ethical standard; *minimally* it

should comply with the law."  <u>Id.</u> (emphasis supplied).  Because I believe that the

government failed to comply with the legal obligation it assumed in entering into a

plea agreement with Mr. Thomas, I respectfully dissent.