**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 14 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

OSWALDO MATA-VASQUEZ,

Defendant-Appellant.

No. 03-2246

(D. New Mexico)

(CR-02-1521-WPJ)

---

**ORDER AND JUDGMENT** [*]

---

Before **HENRY** , **LUCERO** , and **TYMKOVICH,** Circuit Judges.

---

Oswaldo Mata-Vasquez pleaded guilty to one count of reentry into the United States following deportation and a prior conviction for an aggravated felony, a violation of 8 U.S.C. § 1326(a)(1), (a)(2), and (b)(1). The district court denied his motion for downward departure on the grounds of diminished capacity under USSG § 5K2.13, denied his request to continue the sentencing hearing, and sentenced him to thirty-three months' imprisonment.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10TH CIR. R. 36.3.

Prior to sentencing, Mr. Mata-Vasquez and the government's attorney reached an oral agreement that the government would not oppose his motion for downward departure. Mr. Mata-Vasquez now contends that the government's attorney breached that agreement by commenting on Mr. Mata-Vasquez's criminal history at sentencing. We agree, and therefore vacate Mr. Mata-Vasquez's sentence and remand the case for resentencing before a different judge.

## I. FACTUAL BACKGROUND

In August 2002, Mr. Mata-Vasquez pleaded guilty to unlawfully reentering the United States after a felony conviction, in violation of 8 U.S.C. § 1326(a)(1), (a)(2), and (b)(1). There was no written plea agreement.

Mr. Mata-Vasquez objected to the initial presentence report and presented a psychological evaluation that indicated that, with an IQ of 51, he suffered from diminished capacity. In response, the probation office prepared an addendum to the presentence report that recommended a downward departure based on diminished capacity. In turn, Mr. Mata-Vasquez filed a motion for downward departure. He argued that the offense was non-violent, that he was suffering from significantly reduced mental capacity, that the diminished capacity was not caused by the voluntary use of drugs or alcohol, that his diminished capacity contributed to the commission of the offense, and that his criminal history did not indicate a

need to protect the public. The motion did not request a specific level of departure but instead sought a sentence of time-served. Prior to sentencing, Mr. Mata-Vasquez's attorney and Assistant United States Attorney Mark D'Antonio entered into an oral agreement that the government would not oppose a four-level downward departure on the grounds of diminished capacity.

At sentencing, Mr. Mata-Vasquez's counsel first sought the four-level departure that would reduce Mr. Mata-Vasquez's base offense level to 9, resulting in a sentencing range of 21 to 27 months. Counsel cited Mr. Mata-Vasquez's psychological evaluations and low IQ, which placed him "firmly in the bottom 1% of the population." Rec. vol. I, doc. 30, at 2-3 (Evaluation Report filed June 27, 2003). Defense counsel noted that Mr. Mata-Vasquez's IQ level of about forty points below the average prisoner placed him "well out of the Heartland," given the average IQ levels among the prison population to date. *Id.* vol. III, at 4 (Sentencing Hr'g dated Sept. 22, 2003) (citing *United States v. Adonis*, 744 F. Supp. 336, 341 (D.D.C. 1990)) ("According to the most comprehensive study of IQ levels and mental retardation among the prison population to date, the average IQ of this population is 93.2. . . ."). Mr. Mata-Vasquez's counsel then asked for an additional two level downward departure, which would result in a sentence "very close to . . . time served." *Id.* at 6.

In response, Mick Guitierrez, the Assistant United States Attorney handling the sentencing hearing, conceded that the government had agreed not to oppose a four-level reduction. However, the AUSA stated "that's as far as the Government's willing to go," and proceeded to "make a couple of observations." *Id. at* 7. Defense counsel attempted to interrupt, but was quieted by the court.

The AUSA then advised the court that it "may not depart below the applicable guideline range if . . . the defendant's criminal history indicates a need to incarcerate the defendant to protect the public." *Id.* (quoting USSG § 5K2.13). The government observed that Mr. Mata-Vasquez had the highest possible criminal history category of VI, and reminded the court that Mr. Mata-Vasquez was convicted of assault and family violence, and theft over $1,500. The government continued:

> Now, the Court may be thinking: Why on the one hand does the Government agree to four levels and on the other hand say he's got a criminal history category VI, and **the two don't comport?** And I think that, in dealing with any type of defendant, the Court will use its discretion in trying to figure out what is a just result in this. And I believe, Mr. D'Antonio, in dealing with [defense counsel] – since he had given his word that he'd be going the four levels, then I won't object to that. But I would point out to the Court and caution the Court to not go any further because of these facts that are presented in the case.

*Id.* at 8 (emphasis supplied).

Mr. Mata-Vasquez's counsel sought a continuance, claiming that the government's argument was inconsistent with the agreement made with Mr.

-4-

D'Antonio and violated an oral agreement not to bring up "any negative aspects about Mr. Oswaldo Mata-Vasquez." *Id.* at 9. The court denied the motion. The court stated that "[t]he Government comments about – or the dispute about what, in fact, the Government would oppose and not oppose does not influence my decision." *Id.* at 11. The court noted Mr. Mata-Vasquez's IQ, and then immediately noted that

> Mr. Mata-Vasquez's presentence report indicates also the following facts: That at the time of his arrest, he admitted he was a citizen of Mexico and in the United States illegally; that he has a criminal history dating back to age 16, in 1995 including a conviction for assault and family violence in 2000; he has a sixth grade education and specialized training and skills as a mechanic an electrician, and know how to fix televisions, VCR's and radios.
>
> . . . [A]lthough he may not fully comprehend why it is wrong to return to the United States, he does, apparently, understand the wrongfulness of his actions.

*Id.* at 12-13.

The court concluded that Mr. Mata-Vasquez was "not entitled to a downward departure based on a diminished mental capacity." *Id.* at 13. The court observed, echoing the argument of the AUSA that the "two don't comport," that it was "having troubling squaring an allegation of diminished capacity or IQ of the range being asserted by the defendant with the long criminal history that is presented to the Court." *Id.*

The court found that it was not authorized to depart for two reasons: First, Mr. Mata-Vasquez did "understand the wrongfulness of his actions." *Id.* at 13 (referring to USSG 5K2.13 comment (n.1), which defines "significantly reduced mental capacity" where "the defendant, although convicted, has a significantly impaired ability to . . . understand the wrongful of the behavior comprising the offense or to exercise the power of reason."). Second, "his extensive criminal history," *id.*, suggested "a need to incarcerate the defendant to protect the public." USSG § 5K2.13. Finally, the court noted that "[e]ven if departure were authorized under the facts of this case, **which I do not believe it is**, I would still exercise my discretion not to depart." *Id.* (emphasis supplied)

Mr. Mata-Vasquez's counsel again sought a continuance, citing the absence of Mr. D'Antonio from the hearing. The government did not oppose the continuance. The court rejected this motion, stating "I put on the record that I don't believe any dispute between what . . . Mr. D'Antonio[] may or may not have said had any influence on my decision to deny[] the motion [to depart]." *Id.* at 14.

Defense counsel sought another continuance, citing the absence of two family members who could present testimony regarding Mr. Mata-Vasquez. The court denied the motion. Defense counsel asked the court to reconsider its refusal to grant a continuance, citing recent Supreme Court jurisprudence regarding

mentally incapacitated defendants, and emphasizing Mr. Mata-Vasquez's significantly reduced mental capacity. When asked, the government replied that "the Court can go to sentencing." *Id.* at 16.

The court allowed Mr. Mata-Vasquez to make a statement and proceeded to sentence him to thirty-three months' incarceration and two years' supervised release.

Defense counsel sought an additional continuance, citing the problems Mr. Mata-Vasquez has faced while in protective custody (which included abuse), and suggested that prison personnel observations might support a downward departure. The government opposed the continuance and the court rejected the motion.

## II. DISCUSSION

On appeal, Mr. Mata-Vasquez challenges the district court's denial of his requests to continue the sentencing hearing. He contends that the AUSA's comments at sentencing breached the government's agreement that it would not oppose a four-level downward departure. Mr. Mata-Vasquez requests this court to vacate his sentence and remand the case for resentencing before a different judge.

### A. Jurisdiction and Standard of Review

We must first determine whether we have jurisdiction over this appeal. As a general rule, absent the district court's misunderstanding of its authority to depart, we lack jurisdiction to review a sentencing court's discretionary refusal to depart downward from the guideline sentencing range. *See United States v. Brown*, 316 F.3d 1151, 1154 (10th Cir. 2003). However, we do have jurisdiction to review a defendant's contention that the government has breached an agreement regarding a request for departure. *See United States v. Brye*, 146 F.3d 1207, 1209 (10th Cir. 1998). "Whether government conduct has violated a plea agreement is a question of law which we review de novo." *Id.* (internal quotation marks omitted).

## B. Breach of the Agreement

Mr. Mata-Vasquez contends that the AUSA's comments at sentencing breached the agreement not to oppose a four-level departure motion. The government disagrees, maintaining that the AUSA "did nothing more than recite the applicable law . . . , refer the court to the facts in the presentencing report, and urge the court not to depart more than four levels." Aple's Br. at 19. According to the government, "[t]he fact that the court disagreed with both [Mr.] Mata-Vasquez and the government and denied [Mr.] Mata-Vasquez's motion does not mean that the government breached its agreement." *Id.*

The parties acknowledge that the oral agreement in question was equivalent to a plea agreement. We therefore consider our plea agreement jurisprudence, applying general principles of contract law to determine the obligations of the parties. *See Brye*, 146 F.3d at 1210. This Court construes the agreement according to "what the defendant reasonably understood" at the time of the agreement. *United States v. Veri*, 108 F.3d 1311, 1313 (10th Cir. 1997). We will hold the government to those promises "that it actually made to the defendant." *United States v Peglera*, 33 F.3d 412, 413 (4th Cir. 1994).

Moreover, "[b]oth to protect the plea bargaining defendant from overreaching by the prosecutor and to insure the integrity of the plea bargaining process, the most meticulous standards of both promise and performance must be met by the government." *United States v. Ingram*, 979 F.2d 1179, 1184 (7th Cir. 1992). "Because a government that lives up to its commitments is the essence of liberty under law, the harm generated by allowing the government to forego its plea bargain obligations is one which cannot be tolerated." *Peglera*, 33 F.3d at 414.

Applying those principles, this court has carefully scrutinized the statements of government lawyers who have allegedly violated plea agreements through arguments at sentencing. We have concluded that a government lawyer may not "accomplish 'through indirect means what it promised not to do

directly.'" *United States v. Hawley*, 93 F.3d 682, 692 (10th Cir. 1996) (quoting *United States v. Hand*, 913 F.2d 854, 856 (10th Cir. 1990) (internal quotation marks omitted). In determining whether the government has fulfilled its obligations, we have considered not only attorneys' explicit statements but also the implications of those statements, noting that the government may breach an agreement by "thinly disguised . . . effort[s] to persuade the court in a way that the government promised it would not do." *Brye*, 146 F.3d at 1213 (quoting *Hawley*, 93 F.3d at 693).

For example, in *Brye*, we concluded that the government had breached its agreement not to oppose a motion for downward departure on the grounds of coercion and duress by the defendant. Although the government attorney did not expressly state that it opposed the departure motion, he did refer the court to the Guidelines and the record in the following terms:

> Section 5K2.12 speaks of "serious" duress. The guideline drafters further provided that the extent of departure, if any, should be based upon the reasonableness of the defendant's conduct and whether it would have [been] less harmful.
> One of the best methods for the court to determine this issue is to review the *defendant's own words*, captured in a wiretap, as he spoke those words just prior to, and after, the car chase. They reflect defendant's decisions in dealing with what had, undisputably, been a long-standing "family" matter, potentially involving inter-family violence. *The real issue seems to be whether the "duress" was so extreme that defendant acted reasonably by*

-10-

> *breaking the law to protect himself and others,* or whether this was a case of mutual combatants.

146 F.3d at 1213 (emphasis added).

We concluded that the implication of this statement was clear: Judge Briscoe, writing for the court, noted: "By pointing out the 'real issue' and highlighting the 'defendant's own words' as 'one of the best methods for the court to determine this issue,' the government was obviously, albeit subtly, taking a position on whether defendant should receive a downward departure for coercion and duress." *Id.* We added that "perhaps the best indication of the fact that the government's statements were meant to persuade is that the court ultimately resolved defendant's motion by reviewing defendant's 'own words' in the tape-recorded conversations and concluding the brothers had a 'mutual disagreement.'" *Id.*

*Brye* is applicable here. Like the prosecutor in *Brye*, the AUSA, although not directly opposing the motion for downward departure, informed the district court that a four-level departure did not "comport" with Mr. Mata-Vasquez's criminal history. The government then sought to distance itself from its words by suggesting to the court that it had the discretion to determine the appropriate result in the case. The AUSA undermined the persuasive effect of the government's agreement to a four-level departure by pointing to parts of the record that suggested that departure was not warranted – indeed, not possible –

and by reminding the court that it need not depart as much as the parties had agreed. *See United States v. Cooper*, 70 F.3d 563, 567 (10th Cir. 1995) (noting that "[t]he prosecutor has many ethical duties, including ethical duties of deciding what charges to bring and what plea agreements to make" and stating that "[i]f at a later date the government discovers facts that cause it to believe that its prosecutorial discretion was not properly exercised, it has the ethical obligation to withdraw from the plea agreement and advise the defendant so that he or she may prepare for trial or renegotiate")

As in *Brye*, this was "a thinly disguised, if disguised at all, attempt to persuade the court in a way that the government had promised it would not do." 146 F.3d at 1213. Moreover, just as in *Brye*, the persuasive effect of the government's indirect advocacy against departure is apparent from the district court's ruling. In refusing to depart to any degree, the court referred to Mr. Mata-Vasquez's history—the very factor that the AUSA had stated did not "comport" with departure. We therefore conclude that the government breached its agreement not to object to a four-level departure.

**C. Remedy for Breach**

Having determined that the government breached the agreement, we turn to the question of remedy. When the government inadvertently breaches a plea agreement, "the interests of justice and appropriate recognition of the duties of

-12-

the prosecution in relation to promises made in the negotiation of pleas of guilty will be best served by remanding the case to the state courts for further consideration." *Santobello v. New York,* 404 U.S. 257, 263 (1971). Following *Santobello*, this circuit has remanded cases to the district court to determine whether the appropriate remedy for the government's breach of the plea agreement should be withdrawal of the plea agreement or resentencing before a different judge. *See Brye*, 146 F.3d at 1214; *Hawley*, 93 F.3d at 694.

Here, Mr. Mata-Vasquez seeks only resentencing before a different judge. That remedy is *pro forma*, and usually afforded. *See Brye*, 146 F.3d at 1213 ("Since it does not appear that the government's breach [was] egregious or intentional, . . . we remand only for resentencing by a different judge."). The fact that the district court stated that the AUSA's comments did not affect its decision does not alter our analysis. *See Santobello,* 404 U.S. at 262 (stating that it need not consider whether the prosecutor's recommendation influenced the sentencing court); *Hawley*, 93 F.3d at 693 ("The government breached its plea agreement with Hawley, and Hawley is entitled to relief *regardless* of whether the government's conduct actually affected the sentencing judge.") (emphasis supplied). As in *Santobello*, "[w]e emphasize that this is in no sense to question the fairness of the sentencing judge; the fault here rests on the prosecutor, not on the sentencing judge." 404 U.S. at 263.

## III. CONCLUSION

Accordingly, we conclude that Mr. Mata-Vasquez is entitled to specific performance of the government's agreement not to oppose, either directly or indirectly, a four-level downward departure. We therefore VACATE Mr. Mata-Vasquez's sentence and remand for resentencing by a different judge.

Entered for the Court


Robert H. Henry
Circuit Judge