**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 27, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

PASQUALE RUBBO, a/k/a Patsy Rubbo,
a/k/a Anthony Rubbo,

    Defendant - Appellant.

No. 18-1342

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:17-CR-00417-RBJ-3)**
_____

Rick E. Bailey, Conlee, Schmidt & Emerson, L.L.P., Wichita, Kansas, for the Appellant
Pasquale Rubbo.

Marissa R. Miller, Assistant United States Attorney (Jason R. Dunn, United States
Attorney, with her on the brief), Office of the United States Attorney for the District of
Colorado, Denver, Colorado, for the Appellee.
_____

Before **MORITZ**, **McKAY**, and **CARSON**, Circuit Judges.
_____

**CARSON**, Circuit Judge.
_____

This case arose out of a fraudulent business scheme involving the sale of the

"Scrubbieglove" cleaning product. Defendant Pasquale Rubbo ("Defendant") and

other co-conspirators lied to investors to solicit money, ultimately defrauding them of

more than six million dollars.  Defendant pleaded guilty to two fraud-related charges, but now appeals his sentence because the government breached the Plea Agreement.

Our jurisdiction arises under 28 U.S.C. § 1291.  We hold the government did not breach the Plea Agreement and, therefore, dismiss Defendant's appeal.

I.

A grand jury returned an indictment against Defendant for fraud, conspiracy to commit fraud, use of interstate commerce to conduct fraud, and engaging in monetary transactions with funds derived from fraud.

The conspirators lured potential investors to the "Scrubbieglove" by lying about high returns on investment, potential and ongoing business deals, and how they would use and invest funds.[1]  They also misrepresented the Scrubbieglove's production demand.  They falsely told investors that the Scrubbieglove required substantial financing because of deals with QVC, Wal-Mart, Walgreens, and other major retailers.  In reality, beyond producing a few samples, the conspirators never manufactured any Scrubbiegloves.  Instead, the conspirators transferred investor funds to their own personal bank accounts.

Defendant's primary role in the scheme involved intimidating and threatening investors to ensure their silence.  Defendant, for example, called investors and threatened to sue and take away their investment money if they spoke with law enforcement.

---

[1] As reflected in the indictment, the conspirators originally named the Scrubbieglove "Spongebuddy", but they later rebranded it "Scrubbieglove."

2

Defendant ultimately pleaded guilty to conspiracy to commit fraud and to engaging in a monetary transaction involving the proceeds of criminal activity. Defendant also waived his right to appeal the sentence. In exchange, the government dismissed the remaining counts and, if Defendant "fully and truthfully" cooperated, agreed to file a motion for a downward departure at sentencing. The government specified that "based on the facts known to the government as of the date of the Plea Agreement," it expected to recommend a twenty-percent departure "from the high-end of the applicable guideline range."

After being released on bond, however, Defendant communicated with a known witness in the case—participating in phone calls, email exchanges, and wire transfers to license the Scrubbieglove through the witness's company. Defendant's actions violated the conditions of his bond, which prohibited him from contacting any victim or witness in the case. Defendant neither informed the government of his unpermitted contact with the witness, nor of his ongoing efforts to license the Scrubbieglove.

After the government learned of Defendant's conduct, it recommended only a fifteen-percent departure rather than twenty percent at sentencing. Defendant did not object to the recommendation and did not respond to the government's motion for downward departure.[2] The district court accepted the recommendation and sentenced Defendant to 106 months' imprisonment.

---

[2] Defendant admits he did not preserve his objection below, so we review for plain error only. Under the plain error standard, Defendant must first demonstrate an

3

Afterward, Defendant appealed, arguing the government could not enforce the appellate waiver in his Plea Agreement because it breached the agreement by not recommending a twenty-percent departure. We review the question de novo. United States v. Guzman, 318 F.3d 1191, 1195 (10th Cir. 2003).

## II.

"[A]n appellate waiver is not enforceable if the Government breaches its obligations under the plea agreement." United States v. Rodriguez-Rivera, 518 F.3d 1208, 1212 (10th Cir. 2008). We must therefore determine whether the government breached. To do so, "we apply a two-step process: (1) we examine the nature of the government's promise; and (2) we evaluate this promise in light of the defendant's reasonable understanding of the promise at the time the guilty plea was entered." United States v. Brye, 146 F.3d 1207, 1210 (10th Cir. 1998). To evaluate the government's promise, we "apply general principles of contract law" based on "the express language used in the [plea] agreement." Id. And because the government drafted the Plea Agreement, we construe all ambiguities against the government. Id.

## A.

Defendant contends the government breached the Plea Agreement because it promised – and later refused – to recommend a twenty-percent downward departure.

---

actual error. United States v. Kearn, 863 F.3d 1299, 1305 (10th Cir. 2017). Because we conclude the government did not breach the Plea Agreement, Defendant fails at step one. We therefore do not address the remaining elements of plain error review.

4

To determine the government's obligations, we examine the express language used in the agreement. The agreement states:

> Provided that the defendant continues to fully and truthfully cooperate with the government as described above, as determined in the government's *sole discretion*, the government agrees that it will file . . . a motion for downward departure, pursuant to Section 5K1.1 of the Sentencing Guidelines and Title 18, United States Code, Section 3553(e). Based on the facts known to the government as of the date of the Plea Agreement, the government *expects* to file a motion for downward departure pursuant to Section 5K1.1 recommending a departure of twenty percent to be calculated from the high-end of the applicable guideline range.

ROA, Vol. 1 at 36–37 (emphasis added). The government agreed to file a motion for downward departure so long as Defendant "fully and truthfully" cooperated with the government. The government also stated that it *expected* to recommend a twenty-percent departure "based on the facts known to the government as of the date of the Plea Agreement." Thus, the express language shows the government did not unequivocally promise to recommend a departure of a certain percentage. United States v. Robertson, 45 F.3d 1423, 1443 (10th Cir. 1995) (reasoning that the government did not breach plea agreement where the promise of a specific sentencing recommendation was "expressly premised on the [defendant's] 'tentative' criminal history"). Instead, the government conditioned its obligations on Defendant's full and truthful cooperation, as well as facts known to it at the time of execution. The government also retained *sole discretion* to evaluate Defendant's cooperation. The government consequently made no promise to make a specific sentencing recommendation.

5

Defendant next argues the government breached the agreement because it made a smaller downward departure recommendation for reasons unrelated to Defendant's cooperation. The Plea Agreement states:

> The defendant agrees to cooperate fully, honestly, without reservation, and affirmatively with the government relating to any matter being investigated by the government about which the defendant may possess knowledge, information, or materials.

ROA, Vol. 1 at 35. The agreement obligated Defendant to cooperate affirmatively with the government on *any* matter under investigation. Defendant concedes that while out on bond, he and his co-conspirators attempted to license the Scrubbieglove—the product at the center of the government's case. Defendant also does not dispute that he contacted a known witness in the case, which violated his bond conditions. Defendant withheld this information from the government despite his affirmative obligation to cooperate on any matter relating to the government's investigation. United States v. Lezine, 166 F.3d 895, 904 (7th Cir. 1999) (holding that the defendant failed to "fully and truthfully cooperate with Government" where he made "misrepresentations to probation officers").

Defendant's attempts to license the Scrubbieglove, and his communications with a witness relate to a "matter being investigated by the government" as described in the Plea Agreement. The government unsurprisingly determined that Defendant's conduct warranted a reduced departure recommendation. Given that Defendant withheld information relating to the government's investigation, it did not breach the Plea Agreement by recommending a fifteen-percent departure at sentencing.

6

Because the government did not breach the Plea Agreement, the appellate-waiver provision in the agreement bars Defendant's appeal.

APPEAL DISMISSED.